**25-719**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

SEAN HARVELL,
Plaintiff-Appellee,

v.

CHET RIGNEY, et al.,
Defendants-Appellants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:23-cv-00101-CSD

---

# DEFENDANTS - APPELLANTS' OPENING BRIEF

---

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Shane Brown, Madeline Pickens,*
*and Chet Rigney*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iv

I. INTRODUCTION ........ 1

II. JURISDICTIONAL STATEMENT ........ 2

III. STATEMENT OF THE ISSUES PRESENTED ........ 2

IV. STATEMENT OF CASE AND PROCEDURAL HISTORY ........ 3

V. STANDARD OF REVIEW ........ 12

VI. SUMMARY OF ARGUMENT ........ 14

VII. ARGUMENT ........ 15

A. Defendants Are Entitled to Qualified Immunity Under Established Precedent ........ 15

B. Defendants did *NOT* Use Excessive Force Against Harvell in Violation of the Eighth Amendment ........ 17

1. Defendants' Use of Force Was Necessary and *NOT* Excessive ........ 18

2. Harvell Failed to Allege Facts Establishing a Sadistic or Malicious Purpose for the Force Applied ........ 33

3. Harvell Failed to Allege Facts Establishing that the Force Personally Employed by Officer Pickens Was Excessive ........ 34

C. Harvell Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law ..... 37

D. This Court Must Accept as True NDOC Factual Findings Supported by Substantial Evidence ..... 40

VIII. CONCLUSION ..... 44

STATEMENT OF RELATED CASES ..... 46

CERTIFICATE OF COMPLIANCE ..... 46

CERTIFICATE OF SERVICE ..... 47

# TABLE OF AUTHORITIES

## CASES

*Allen v. Bosley*, 253 Fed. Appx. 658, 2007 WL 3244002 (9th Cir. 2007) .......... 23, 24, 25, 29, 33

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) .......... 13

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .......... 15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 34

*Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) .......... 18

*Behrens v. Pelletier*, 516 U.S. 299 (1996) .......... 2

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024) .......... 16, 37, 38, 39

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 14

*Centennial Puerto Rico License Corp. v. Telecommunications Regulatory Bd. of Puerto Rico*, 634 F.3d 17 (1st Cir. 2011) .......... 42

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021) .......... 16

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) .......... 38

*Curley v. City of N. Las Vegas*, 772 F.3d 629 (9th Cir. 2014) .......... 13

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) .......... 13

*Eccleston v. Oregon ex rel. Oregon Dept. of Corr.*, 168 Fed. Appx. 760, 2006 WL 390228 (9th Cir. 2006) .......... 23, 24, 25, 32

*Farmer v. Brennan*, 511 U.S. 825 (1994) .......... 35, 36

*Hoard v. Hartman*, 904 F.3d 780 (9th Cir. 2018) .......... 18

*Howard v. Nunley*, 465 Fed. Appx. 669, 2012 WL 35396 (9th Cir. 2012) ....................22, 24, 25, 29, 32

*Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022)....................19, 20, 36

*In re Brazier Forest Products, Inc.*, 921 F.2d 221 (9th Cir. 1990) ..........14

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001)....................33, 39

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) ....................35

*Keller v. Trefz*, 66 Fed. Appx. 44, 2003 WL 1870718 (7th Cir. 2003).....34

*Kisela v. Hughes*, 584 U.S. 100 (2018)....................16, 17

*Landes Construction Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987) ....................43

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ....................35

*LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993) ....................24

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) ....................13, 14

*Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010)....................18

*Reichle v. Howards*, 566 U.S. 658 (2012)....................16

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)....................17

*River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458 (9th Cir. 1992) ....................14

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) ........17

*Rodriguez v. Elmore*, 407 Fed. Appx. 124, 2010 WL 5393881 (9th Cir. 2010)....................23, 24, 25, 34

*Sandin v. Conner*, 515 U.S. 472 (1995) ....................41

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................ 11

*Skinner v. Cunningham*, 430 F.3d 483 (1st Cir. 2005) .................... 27, 28

*Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984) ...................... 21, 22, 25, 29

*Stenzel v. Ellis*, 916 F.2d 423 (8th Cir. 1990) .................................. 31, 32

*Thornburgh v. Abbott*, 490 U.S. 401 (1989) ........................................... 41

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) .................................. 36

*Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143 (1946) ............................................................................................ 42

*US West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112 (9th Cir. 1999) ............................................................................. 42

*US West Communications, Inc. v. Jennings*, 304 F.3d 950 (9th Cir. 2002) ............................................................................................ 43

*Whitley v. Albers,* 475 U.S. 312 (1986) ................................ 18, 25, 26, 27

*Wilkins v. Gaddy*, 559 U.S. 34 (2010) ......................................... 19, 33, 39

*Woodford v. Ngo*, 548 U.S. 81 (2006) ................................... 40, 41, 42, 43

**STATUTES**

28 U.S.C. § 1291 ........................................................................................ 2

42 U.S.C. § 1997e ...................................................................................... 40

**RULES**

9th Cir. R. 32-1 ......................................................................................... 46

Fed. R. App. P. 32 ...................................................................................... 46

Fed. R. App. P. 4 .......................................................................................... 2

Fed. R. Civ. P. 56 .......... 13

# I. INTRODUCTION

The district court erred by denying the motion for summary judgment, filed by Defendants-Appellants Shane Brown, Madeline Pickens, and Chet Rigney, because they are entitled to qualified immunity, as employees or former employees of the Nevada Department of Corrections (NDOC). Plaintiff-Appellee Sean Harvell, an offender who is lawfully incarcerated by NDOC, repeatedly and intentionally refused direct orders to move to segregated housing and to submit to restraints, in an attempt to assert his authority over that of NDOC, which refusal and denial of authority placed NDOC staff and other inmates in danger. Harvell was ordered to move to segregated housing and submit to restraints after threating violence, but Harvell intentionally refused to comply. Due to Harvell's intentional disobedience, the use of force to extract Harvell from his cell was authorized as part of a bed move due to Harvell's threats of violence. Defendants did not violate the Eighth Amendment's prohibition against cruel and unusual punishment because the use of force was a good faith effort to restore discipline, after Harvell intentionally refused to comply with officers' lawful orders, and therefore the force was not used maliciously and sadistically for the purpose of causing harm. By properly employing the use of force, Defendants were able to extract Harvell from his cell in ninety seconds, with minimal injury.

Defendants are entitled to qualified immunity because they did not violate the Eighth Amendment, much less violate a right clearly established beyond debate. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment, and remand with instructions to grant Defendants' motion because they are shielded by qualified immunity.

## II. JURISDICTIONAL STATEMENT

This Court has jurisdiction over Defendants' appeal pursuant to 28 U.S.C. § 1291 because Defendants' notice of appeal (2-ER-262-64, ECF No. 67) was timely filed on January 31, 2025, within thirty (30) days after the district court entered its order, on January 6, 2025 (1-ER-2-18), partially denying Defendants' motion for summary judgment asserting qualified immunity. *See* Fed. R. App. P. 4; *see also Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) (holding "an order rejecting the defense of qualified immunity" is a "'final' judgment subject to an immediate appeal," which may be raised "at either the dismissal stage or the summary judgment stage").

## III. STATEMENT OF THE ISSUES PRESENTED

**A.** Whether the district court erred by denying Defendants' motion for summary judgment on Plaintiff offender's claim of excessive force in violation of the Eighth Amendment when the use of force was employed only after Plaintiff repeatedly and intentionally refused to

obey the lawful orders of prison officers to move to segregated housing and submit to restraints, and the objectively reasonable force was applied in a good faith effort to maintain or restore discipline.

**B.** Whether district court erred by denying Defendants' motion for summary judgment asserting qualified immunity when Plaintiff failed to point to facts establishing a violation of the Eighth Amendment, much less a violation of clearly established law, beyond debate.

## IV. STATEMENT OF CASE AND PROCEDURAL HISTORY

Harvell is an offender, lawfully incarcerated in the custody of NDOC, and was housed at Ely State Prison (ESP). 2-ER-224, ECF No. 7 at 1. On June 1, 2022, at approximately 7:30 p.m., Harvell threatened a mass shooting at Ely similar to one that had recently occurred at an elementary school. 2-ER-204, ECF No. 48-3 at 2. As a result, Harvel was charged with a major violation, MJ25, Threats. 2-ER-204, ECF No. 48-3 at 2. Due to the pending charges, Harvell was to be placed in segregated housing. 2-ER-201, 210; ECF Nos. 48-2 at 3:4-7, 48-4 at 2.

On June 2, 2022, however, Harvell refused orders from NDOC supervisors to move to segregated housing. 2-ER-150-56, 201, ECF Nos. 48-2 at 3, 55 at 18-24. Harvell was given multiple chances to pack up his property and move, but he refused each time. 2-ER-153, ECF No. 55 at 21. As a result, the Correctional Emergency Response Team (CERT

or Team) was called to perform a planned use of force to remove Harvell from his cell. 2-ER-150-56, ECF No. 55 at 18-24.

At approximately 2:52 p.m., Sgt. Lester began recording video. 2-ER-151, 155, ECF No. 55 at 19, 23; Handheld Video Recording (Video Recording), Time Index (TI) 0:00-1:30.[1] Prior to the extraction, the Team was advised that Harvell was on the desensitized list, and therefore chemical and electronic uses of force could not be used. Video Recording, TI 0:30-0:37. The Team was instructed that Harvell would be given another opportunity to submit to restraints, but if Harvell refused then force would be utilized. Video Recording, TI 0:35-0:45. Medical was notified of the planned use of force and was on the scene to provide care if needed. 2-ER-154, ECF No. 55 at 22.

At approximately 2:54 p.m., the Team arrived at Harvell's door. 2-ER-155, ECF No. 55 at 23; Video Recording, TI 1:25-1:35. Harvell was ordered to submit to restraints. 2-ER-155, ECF No. 55 at 23; Video Recording, TI 1:25-1:40. Harvell refused, and indicated that restraints were not necessary because he was going to come out anyway. 2-ER-150, 152, ECF No. 55 at 18, 20; Video Recording, TI 1:25-1:40. Harvell, however, continued to be aggressive and a strong odor of inmate-made

[1] Concurrent with this brief, Defendants-Appellants moved to transmit the video recordings, which were manually filed with the district court as Exhibit A to Defendants' motion for summary judgment. 2-ER-178-79, ECF No. 49.

alcohol was coming from Harvell's cell. 2-ER-150, 152-56, ECF No. 55 at 18, 20-24. Harvell was then ordered to turn around, but he refused and remained standing by the window in the cell door. 2-ER-150, 152, ECF No. 55 at 18, 20; Video Recording, TI 1:40-1:45. Harvell again was ordered to turn around and face the back of the cell. 2-ER-150, 152, ECF No. 55 at 18, 20; Video Recording, TI 1:45-1:55. He again refused. Harvel then appeared to finally comply when he put his wrists through his cell door food slot so that he could be cuffed. 2-ER-150, 152-56, ECF No. 55 at 18, 20-24; Video Recording, TI 1:45-2:05. After Harvell's left wrist was restrained, however, he again continued to resist by attempting to pull his left hand back into his cell to capture the cuffs. 2-ER-150, 152, ECF No. 55 at 18, 20; Video Recording, TI 2:00-2:30. After being told several times to stop resisting, officers were finally able to restrain both wrists. 2-ER-150-57, ECF No. 55 at 18-25; Video Recording, TI 2:00-2:30.

After Harvell's wrists were restrained, Harvell was repeatedly ordered to kneel on the ground. 2-ER-150-57, ECF No. 55 at 18-25; Video Recording, TI 2:20-2:30. After being ordered to kneel down on the ground for the fifth time, Harvel continued to sit on his ankles so that ankle restraints could not be applied. 2-ER-150, 152, 154-57, ECF No. 55 at 18, 20-25; Video Recording, TI 2:20-3:00.

Harvell's cell door was then opened so that officers could secure Harvell's compliance and restrain Harvell's legs. 2-ER-150-57, ECF No. 55 at 18-25; Video Recording, TI 2:40-3:00. Harvell was then ordered to sit up so that his legs could be restrained. 2-ER-150, 152-57, ECF No. 55 at 18, 20-25; Video Recording, TI 2:45-3:00. Due to Harvell's continued refusal, Harvell was warned that he needed to follow officers' orders or force would be utilized. 2-ER-150, 152-57, ECF No. 55 at 18, 20-25; Video Recording, TI 2:45-3:00.

At approximately 2:57 p.m., Harvell continued his active physical resistance by pulling his left leg up from the kneeling position, attempted to stand up, and then ran to the back of his cell. 2-ER-150, 152-53, 155-56, ECF No. 55 at 18, 20-21, 23-24; Video Recording, TI 2:55-3:05. All five CERT officers followed to restrain Harvell. 2-ER-150-57, ECF No. 55 at 18-25; Video Recording, TI 2:55-3:05. Officer Rigney entered first, placed Harvell on his stomach, and segmented the right side of Harvell's body. 2-ER-150, 152, ECF No. 55 at 18, 20; Video Recording, TI 0:05-0:15, 2:55-4:30. Senior Correctional Officer Brown entered second, to help place Harvell on the floor so that his legs could be restrained. 2-ER-156, ECF No. 55 at 24; Video Recording, TI 0:10-0:20, 2:55-4:30. Officer Pickens entered fifth and assisted with segmenting Harvell by maintaining positive control of Harvell's head. 2-ER-153, ECF No. 55 at 21; Video Recording, TI 0:20:30, 2:55-4:30.

Approximately twenty-five (25) seconds after entering Harvell's cell, Harvell's legs were secured so that restraints could be placed on Harvell's legs. 2-ER-153, ECF No. 55 at 21; Video Recording, TI 2:55-3:25. During this time Harvell was repeatedly told to stop resisting. Video Recording, TI 2:55-3:25. Senior Officer Davis, then requested and was given a set of leg restraints. 2-ER-153, ECF No. 55 at 21; Video Recording, TI 3:20-3:30. The order was given to put a spit mask on Harvell. 2-ER-153, ECF No. 55 at 21; Video Recording, TI 3:25-3:30. Because Harvell continued to resist, Harvell was again advised that he needed to follow orders. 2-ER-154-57, ECF No. 55 at 22-25; Video Recording, TI 3:25-3:40. Approximately fifty (50) seconds after officers entered Harvell's cell, his legs were secured with restraints. 2-ER-153, ECF No. 55 at 21; Video Recording, TI 3:45-3:50.

Once Harvell's legs were secured, Harvell was ordered to lift up his head so that the spit mask could be applied. 2-ER-153, ECF No. 55 at 21; Video Recording, TI 4:10-4:20. Officer Picket then applied the spit mask over Harvell's head. 2-ER-153, ECF No. 55 at 21. Officers confirmed that Harvell's arms and legs were properly in restraints. Video Recording, TI 4:20-4:40. Approximately ninety (90) seconds after officers entered the cell, they lifted Harvell up and carried him out of the cell. 2-ER-151-57, ECF No. 55 at 19-25; Video Recording, TI 4:25-4:40.

Officers then escorted Harvell to bottom right shower for an unclothed body search. 2-ER-151-57, ECF No. 55 at 19-25; Video Recording, TI 4:25-4:45. Once in the shower, Harvell was repeatedly ordered to kneel down so that the restraints could be removed. Video Recording, TI 4:25-4:45. Because Harvel did not comply, he was advised he needed to follow instructions. Video Recording, TI 4:45-4:55. Once Harvell complied, his restraints were removed, and he complied with an unclothed body search. 2-ER-151-57, ECF No. 55 at 19-25; Video Recording, TI 4:55-7:20. The search revealed no contraband which could be smuggled into administrative segregation. Video Recording, TI 4:55-7:20.

Harvel responded affirmatively when asked if he wanted to be examined by medical. Video Recording, TI 7:30-7:45. After putting on his clothes, Harvell submitted to restraints and was escorted to the hallway where medical was waiting. 2-ER-151-57, ECF No. 55 at 19-25; Video Recording, TI 7:45-11:00.

Approximately six minutes and thirty seconds after Harvell had been extracted from his cell, Harvell was examined by medical. 2-ER-151-57, ECF No. 55 at 19-25; Video Recording, TI 10:45-14:00. When asked "What hurts," Harvell responded, "everything." Video Recording, TI 10:55-11:05. The examination revealed a laceration on the upper left eye with minimal bleeding, but with the eyebrow swelling; a laceration

on the right eyebrow, with noticeable swelling and minimal bleeding; and noticeable bruising around the bridge of the nose. 2-ER-154, ECF No. 55 at 22; Sealed 3-ER-278; Video Recording, TI 12:50-14:00. All wounds were cleaned and dried. 2-ER-154, ECF No. 55 at 22; Sealed 3-ER-278; Video Recording, TI 12:50-14:00. The examination also revealed that Harvell was able to stand and talk with no complications; able to open his eyes; had no signs or symptoms (S/S) of shortness of breath (SOB) or chest pain; and was fully alert. Sealed 3-ER-278. Medical then released Harvell to be escorted to his new cell in segregated housing. 2-ER-151-57, ECF No. 55 at 19-25; Video Recording, TI 13:20-22:35.

On June 10, 2022, Harvell was examined by an optometrist, based on his complaints (CC) of blurry vision, twitching right eye (OD), which supposedly began after allegedly getting punched. Sealed 3-ER-280. The external (Ext) examination revealed bruising around the orbit of both eyes (OU), full eye control movement (EOM), and that his pupils were equal, round, and reactive to light (Pupil ERRL). Sealed 3-ER-280. The internal (Int) examination revealed a cup-to-disc ratio (C/D), used to assess glaucoma, was within normal limits (WNL). Sealed 3-ER-280. Harvel was diagnosed (Dx) with hyperopia (Hyp), which is farsightedness, with astigmatism (ast). Sealed 3-ER-280. The optometrist prescribed corrective lens to correct Harvell's mild

farsightedness and mild astigmatism (OD:+150-1.25x160, OS:+1.25-0.50x180). Sealed 3-ER-280.

On June 21, 2022, Harvell submitted a grievance complaining that he was assaulted by staff. 2-ER-76, ECF No. 59-2 at 12. Harvell, however, admitted that he refused orders to move to a segregated unit. 2-ER-76, ECF No. 59-2 at 12. Harvell's grievance was partially granted in that his complaint was referred to the Inspector General's office for further investigation. 2-ER-77, ECF No. 59-2 at 13. The Inspector General conducted an investigation. 2-ER-150-57; ECF No. 55 at 18-25. After the investigation was completed, Harvell's grievance was denied based on the findings, supported by the officer's reports and the video of the extraction, that Harvell "refused orders to submit to restraint," the officers "used the minimal amount of force to get [Harvell] into restraints," and therefore "the use of force was reasonable." 2-ER-77, 159; ECF Nos. 55 at 27, 59-2 at 13. Harvell never appealed this denial. 2-ER-76-77, 159; ECF No. 59-2 at 12-13.

On March 13, 2023, Harvell submitted a complaint with the district court alleging, among other claims, that Senior Correctional Officer Brown, Officer Rigney, and Officer Pickett violated the Eighth Amendment by using excessive force when extracting Harvell from his cell. In his Complaint, Harvell admits that he refused the order to move to segregated housed. 2-ER-228, ECF No. 7 at 5. Harvell alleges

"while kneeling on the ground," Senior Correctional Officer "Brown placed ankle restraints on my legs" and "once leg restraints were on," then "CERT C/O Rigney and S C/O Brown pushed me forward & began to punch me again and again, splitting my head open, causing damage to my eyes requiring me to need glasses." 2-ER-228, ECF No. 7 at 5. These allegations, however, are flatly contradicted by the video and the objective medical evidence.[2]

In the video, the leg restraints were not put on when Harvell was kneeling on the ground, but only after Harvell attempted to stand up, and then ran to the back of his cell, and then only after Harvell's legs were secured, despite Harvell's continued resistance. Video Recording, TI 2:55-3:50. Additionally, the video and the objective medical evidence establishes that Harvell's head was not split open, but that he merely suffered a laceration on the upper left eye with minimal bleeding, but with the eyebrow swelling; a laceration on the right eyebrow, with swelling and minimal bleeding; and bruising around the bridge of the nose, all of which required minimal medical attention. 2-ER-154, ECF

---

[2] In *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Supreme Court held that an assertion that is "blatantly contradicted by the record, so that no reasonable jury could believe it" will not create a genuine dispute of material fact at summary judgment. Harvell's version of the facts "is blatantly contradicted" by the video recording and the objective medical evidence, "so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380-81.

No. 55 at 22; Sealed 3-ER-278; Video Recording, TI 9:40-9:50,11:40-14:10. The medical evidence further establishes that corrected lenses were required because Harvell suffered from mild farsightedness and mild astigmatism, not due to any injury to his eyes. Sealed 3-ER-280.

Because video evidence establishes Harvell repeatedly and intentionally disobeyed orders to voluntarily submit to restraints, that Harvell resisted attempts to secure him in restraints, and that officers were able to extract Harvell within ninety seconds after entering Harvell's cell, with minimal injury, Defendants moved for summary judgment. 2-ER-180-215, ECF No. 48. Defendants were shielded by qualified immunity because the force applied was reasonable, in a good faith effort to maintain and restore discipline, and did not violate the Eighth Amendment, much less violate clearly established law.

After the motion was fully briefed (2-ER-51-172, ECF Nos. 58, 59), on January 5, 2025, the district court improperly denied Senior Correctional Officer Brown, Officer Rigney, and Officer Pickett's motion. 1-ER-2-18, ECF No. 63. Because the district court erred, Defendants timely filed their notice of appeal on January 31, 2025. 2-ER-262-64, ECF No. 67.

## V. STANDARD OF REVIEW

A ruling on a motion for "summary judgment is reviewed *de novo*." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.

2001). This Court "may affirm a grant of summary judgment on any ground supported by the record, even one not relied upon by the district court." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 631 (9th Cir. 2014). "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when, viewing the facts in the light most favorable to the nonmoving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to summary judgment as a matter of law." *Arpin*, 261 F.3d at 919. In *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), this Court explained that the "party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial." To meet this burden when "the nonmoving party has the burden of proof at trial, the moving party need only point out [by argument] that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (same). "The moving party need not disprove the other party's case." *Id.* Once the moving party makes this showing, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076. "Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller*, 454

F.3d at 987. "Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 988. "To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). "If the nonmoving party fails to make such a showing, summary judgment will be granted because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## VI. SUMMARY OF ARGUMENT

Defendants are entitled to qualified immunity and therefore the district court improperly denied their motion for summary. Defendants did not violate the Eighth Amendment when employing force to extract Harvell from his cell. This use of force was only applied after Harvell repeatedly and intentionally refused to follow NDOC officers' lawful orders to move to segregated housing and to submit to restraints, in an attempt to assert his authority over that of NDOC, which refusal and denial of authority placed NDOC staff and other inmates in danger.

Defendants did not violate the Eighth Amendment because the use of force was a good faith effort to restore discipline, after Harvell repeatedly and intentionally disobeyed officers' orders, and therefore was not used maliciously and sadistically for the purpose of causing harm. By properly employing the use of force, Defendants were able to extract Harvell from his cell in ninety seconds, with minimal injury.

Defendants are entitled to qualified immunity because Defendants did not violate the Eighth Amendment, much less violate a right clearly established beyond debate. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment, and remand with instructions to grant Defendants' motion because Defendants are shielded by qualified immunity.

## VII. ARGUMENT

### A. Defendants Are Entitled to Qualified Immunity Under Established Precedent

Defendants are shielded by qualified immunity. In *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), the Supreme Court held "[q]ualified immunity shields . . . state officials from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law."

*Id*. at 743. In *Reichle v. Howards*, 566 U.S. 658, 664, (2012), the Supreme Court explained to "be clearly established, a right must be sufficiently clear "that every 'reasonable official would have understood that what he is doing violates that right.'" The "right allegedly violated must be established, not as a broad general proposition, but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id*. at 665. "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 664. "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." *Id*.

In *Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024), this Court recognized "the Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" *Id*. at 660–61, quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "It is not enough that a rule be suggested by then-existing precedent." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5

(2021). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "Thus, to show a violation of clearly established law, [plaintiff] must identify a case that put [each defendant] on notice that his specific conduct was unlawful." *Id.* Officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 584 U.S. at 104. "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 105. Accordingly, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 104.

Harvell failed to establish a violation of the Eighth Amendment, much less a clearly established right required to overcome qualified immunity, beyond debate.

### B. Defendants did ***NOT*** Use Excessive Force Against Harvell in Violation of the Eighth Amendment

Harvell failed to point to any evidence establishing the required elements necessary to succeed on an excessive force claim in violation of the Eighth Amendment. In *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 795 (9th Cir. 2018), this Court held to establish an excessive force claim under the Eighth Amendment, the plaintiff must establish:

(1) the defendant "used excessive and unnecessary force under all of the circumstances;" (2) defendant "acted maliciously and sadistically for the purpose of causing harm;" and (3) "the acts of the [defendant] caused harm to the [plaintiff]." *See also Hoard v. Hartman*, 904 F.3d 780, 788 & n.9 (9th Cir. 2018) (same). In *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020), this Court identified both subjective and objective components to these elements.

The "subjective inquiry for excessive force claims 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 1140 *quoting Hudson*, 503 U.S. at 6-7. The objective component requires the prisoner to "objectively show that he was deprived of something sufficiently serious." *Bearchild*, 947 F.3d at 1140 (citation and internal quotation omitted). Because the use of force relates to the prison official's legitimate interest in maintaining security and order, courts must be deferential when reviewing the necessity of using force. *Whitley v. Albers,* 475 U.S. 312, 321-22 (1986); *see also Norwood v. Vance*, 591 F.3d 1062, 1066-67 (9th Cir. 2010).

### 1. Defendants' Use of Force Was Necessary and <u>*NOT*</u> Excessive

The force applied by Defendants was necessary and not excessive. In *Hudson*, the Supreme Court outlined the following factors to

determine "whether the use of force could plausibly have been thought necessary" or "whether the use of force was wanton and unnecessary:" (1) "the extent of injury suffered by an inmate;" (2) "need for application of force;" (3) "the relationship between that need and the amount of force used;" (4) "the threat reasonably perceived by the responsible officials;" and (5) "any efforts made to temper the severity of a forceful response." 503 U.S. at 7. Each of these factors weigh in favor of Defendants.

First, Harvell's injuries were minor as a result of the force employed. In *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), the Court held the "extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." The Court reasoned the "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38. For this reason, in *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022), this Court held evidence that a detainee, who "suffered dog bites to his left leg, abrasions to his head and face, and bruising on his upper right thigh," along with "scarring and residual soreness in his left leg," merely established "injuries [that] are relatively minor," and therefore "this

factor weigh[ed] slightly in favor of the defendant law enforcement officers."

The injuries sustained by Harvell were far less than those sustained in *Hughes*. The medical examination revealed only minor injuries. 2-ER-154, ECF No. 55 at 22; Sealed 3-ER-278; Video Recording, TI 9:40-9:50,11:40-14:10. Harvell was stable, and his vital signs were within normal limits. Sealed 3-ER-278. Contrary to Harvell's Complaint, video reveals that his head was not split open. Video Recording, TI 9:40-9:50, 11:40-14:10. Also contrary to Harvell's allegations, his blurry vision was caused by mild farsightedness and mild astigmatism, not due to any injury to his eyes. Sealed 3-ER-280. As Harvell's injuries are less serious than the injuries sustained in *Hughes*, the first factor weighs in favor of Defendants.

Second, the need for application of force was clear as Harvell repeatedly refused to follow officers' lawful orders to move to segregated housing. 2-ER-150-56, ECF Nos. 48-2 at 3, 55 at 18-24. Harvell then repeatedly and intentionally disobeyed orders to voluntarily submit to restraints, and Harvell resisted attempts to secure him in restraints. 2-ER-150-57, ECF No. 55 at 18-25; Video Recording, TI 1:25-4:40. The video recording of this incident clearly and unambiguously confirms the reasonableness of the force under these circumstances.

In *Soto v. Dickey*, 744 F.2d 1260, 1266 (7th Cir. 1984), a prison captain and lieutenant "were the victims of milk thrown by" the inmate. The captain ordered [the inmate] to come to the front of the cell so he could be handcuffed." *Id.* When the inmate "refused," force was used so that the inmate "was handcuffed, carried to the strip cage and searched." "After all containers that could be used to throw a liquid were removed from his cell, his cell was cleaned, and he was returned." *Id.* The Seventh Circuit held the "evidence does not establish that the actions and conduct of the institution or its personnel . . . violate[d] the Eighth or Fourteenth Amendments." *Id.* at 1271. The court reasoned the use of force "for failure of the inmate to obey a direct order . . . was a reasonable response to the institution's legitimate security concern." *Id.* at 1266-71. The Court explained when "an order is given to an inmate there are only so many choices available to the correctional officer" and if "the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent[3] or physical force." *Id.* at 1267. The court rejected the suggestion that "rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order and wait him out"

[3] Chemical agents was not an option in this case because Harvell was on the desensitized list, and therefore hands-on force was the only viable option that could be used to extract Harvell. Video Recording, TI 0:30-0:37.

because "experience and common sense establish that a prison cannot be operated in such a way." *Id.* at 1267. The court explained that discipline "is essential if the prison is to function and provide for the care, safety and security of the staff and inmates." *Id.* "*Orders given must be obeyed.*" *Id.* (emphasis added). "*Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.*" *Id.* (emphasis added). Someone must exercise authority and control" or else "[m]ob rule would take over," and there "would not, and could not, be any protection for staff or inmates." *Id.* The court concluded when "an inmate refused to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials" and such "refusal and denial of authority place the staff and other inmates in danger." *Id.*

This Court has repeatedly reached the same result. In *Howard v. Nunley*, 465 Fed. Appx. 669, 670, 2012 WL 35396, at *1 (9th Cir. 2012), this Court held the district court properly granted judgment in favor of prison officials when the inmate "disobeyed an order to stop pounding on his cell door after he also received a warning that failure to comply would result in the use of [force]." The Court reasoned that Eighth Amendment is not violated when "force is applied in a good faith effort to maintain or restore discipline." *Id.*

Similarly, in *Rodriguez v. Elmore*, 407 Fed. Appx. 124, 125–26, 2010 WL 5393881, at *1 (9th Cir. 2010), this Court held that the district court properly granted judgment in favor of prison officials when officials used force "after [a prisoner] and his cellmate repeatedly refused to comply with orders to exit their cell and be handcuffed so that prison officials could search their cell for a missing metal object." The Court reasoned that such evidence "failed to raise a triable issue as to whether prison officials acted maliciously and sadistically for the very purpose of causing harm" required to establish an Eighth Amendment violation. *Id.*

Likewise, in *Allen v. Bosley*, 253 Fed. Appx. 658, 659, 2007 WL 3244002, at *1 (9th Cir. 2007), this Court held that the district court properly granted judgment in favor of prison officials when using force "in an effort to restore discipline after [an] inmate . . . refused to comply with orders to submit to standard handcuffing procedure and attempted to block a cell extraction team from entering his cell." The Court reasoned that the inmate "failed to raise a triable issue that the defendants possessed malicious and sadistic intent" because they used force "in an effort to restore discipline." *Id.*

Also, in *Eccleston v. Oregon ex rel. Oregon Dept. of Corr.*, 168 Fed. Appx. 760, 761, 2006 WL 390228, at *1 (9th Cir. 2006), this Court held the district court properly granted judgment on an inmate's "claim that

the use of [force] during his cell extraction constituted cruel and unusual punishment because the evidence submitted established that [force] was only used after [the inmate] repeatedly did not follow orders to leave his cell." The Court reasoned that such "force does not amount to a constitutional violation" because it was "applied in a good faith effort to restore discipline and order, and not maliciously and sadistically for the very purpose of causing harm." *Id.*

In *Howard*, *Rodriguez, Allen* and *Eccleston,* the dispositive fact was the inmate's refusal to follow orders. Defendants repeatedly attempted to obtain Harvell's compliance with officers' orders to move to segregated housing and to submit to restraints, but Harvell intentionally and repeatedly refused to comply with officers' lawful orders. 2-ER-150-57, 201, ECF Nos. 48-2 at 3, 55 at 18-25; Video Recording, TI 1:25-4:40. Harvell could not be permitted to decide which orders he would obey, and when he would obey them. *LeMaire v. Maass*, 12 F.3d 1444, 1462 (9th Cir. 1993) (holding that to "allow prisoners to choose which jailhouse rules they will obey would result in chaos"). When Harvell refused to obey the repeated proper orders to move to segregated housing and to submit to restraints, he was attempting to assert his authority over NDOC and its officials, which refusal and denial of authority placed NDOC staff and other inmates in danger. Accordingly, the use of force for Harvell's repeated and

intentional disobedience of direct orders to submit to restraints was a reasonable response to the NDOC's security concern because NDOC has the duty to protect the staff and inmates from assaults, such as throwing urine on medical staff. As in *Howard*, *Rodriguez, Allen, Eccleston* and *Soto,* force was the only option left available. Accordingly, the second factor weighs heavily in favor of Defendants.

Third, the amount of force used was reasonable, while the need to use force was necessary because Harvell intentionally, and repeatedly disobeyed officers' orders to move to segregated housing and to submit to restraints. Harvell does not dispute that he continued to resist officers' attempts to place leg restraints on Harvell. 2-ER-150-57, ECF No. 55 at 18-25; Video Recording, TI 1:25-4:40. Despite Harvell's continued resistance, the entire extraction lasted only ninety seconds. 2-ER-150-57, ECF No. 55 at 18-25; Video Recording, TI 2:55-4:40.

In *Whitley*, the Supreme Court explained that because prison official "are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the obligation to take reasonable measures to guarantee the safety of the inmates themselves," courts should be "hesitan[t] to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." 475 U.S. at 320. The Court instructed that prison officials "should be accorded wide-

ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321–22. The Court continued: "That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Id.* at 322.

As already set forth, the limited and objectively reasonable force was necessary because Harvell repeatedly refused to comply with orders to move to segregated housing and to submit to restraints. Upon entering the cell, officers were required to make split second decisions with respect to how to respond to Harvell's resistance to restraints, and how to secure Harvell in restraints. Even if Harvell plausibly alleged that Officers Brown and Rigney struck Harvell after his legs were restrained, Harvell offers no evidence that these officers knew that Harvell had been restrained when he was struck. An officer does not violate the Eighth Amendment by employing force in a dangerous situation, in haste and under pressure, which in hindsight, under calm reflection, may have been unnecessary, because such is "hardly behavior from which a wanton willingness to inflict unjustified suffering on respondent can be inferred." *Whitley*, 475 U.S. at 321–25.

As the Supreme Court in *Whitley* held, the "infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." 475 U.S. at 319. This is especially true here, when Harvell's intentional choice to disobey prison officials' repeated orders to move to segregated housing and to submit to restraints was the sole reason for the need to use force in the first place, which Harvell could have avoided by simply taking one of the repeated chances to comply with officers' orders.

In *Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005), "after [the inmate] threw food, officers decided to move him to a different cell, but [the inmate] refused to extend his hands through the slot in the door so that handcuffs could be applied prior to the move." "After warnings, the extraction team sprayed a non-lethal chemical irritant (derived from cayenne pepper) into the cell to make [the inmate] exit the cell without direct physical force; but [the inmate] continued to resist, remaining in the cell despite the spray." *Id.* "The move team then entered the cell, pushed [the inmate] to the ground, handcuffed him, and carried him out." *Id.* The inmate asserted that as he was being carried along outside the cell, he was punched in the face and his eyes, ears, neck and throat were gouged and raked." *Id.* "A

medical report from [the] Hospital prepared two days later said that [the inmate] suffered from a sore shoulder, wrist abrasions and blunt trauma to his eyes, but had no evidence of injury to his head and would be treated with Tylenol." *Id.*

The First Circuit, nevertheless, held that on "this evidence, no reasonable jury could find that [the inmate's] injury, such as it was, resulted from cruelty or deliberate infliction of pain." *Id.* at 489. The court reasoned that the "chaos . . . is wholly of [the inmate's] making" and such evidence did not establish that the inmate was "harmed through deliberate or wanton force unnecessary to his removal." *Id.* at 488-89.

Similarly, the ninety seconds of chaos that occurred during the cell extraction was of Harvell's own making, due to his intentional refusal to submit to restraints. Just as in *Skinner*, even if Harvell plausibly alleged that he was stuck in the head between the short time his legs were restrained and the spit mask was placed on his head, such facts do not establish that Harvell was harmed through deliberate or wanton force unnecessary to his removal, required to establish an Eighth Amendment violation. Due to Defendants' actions, Harvell's injuries were treated immediately by medical staff, which further establishes his minor injuries did not result from cruelty or deliberate infliction of pain.

Accordingly, the third factor also weighs heavily in favor of Defendants. *See Howard*, 465 Fed. Appx. at 670 (holding the use of force was proper when an inmate "disobeyed an order" because force was "applied in a good faith effort to maintain or restore discipline"); *Allen*, 253 Fed. Appx. at 659 (holding administering force was a proper "effort to restore discipline after [an] inmate . . . refused to comply with orders").

Fourth, as already set forth, Defendants reasonably perceived Harvell's disobedience as a threat to discipline, safety, security and order. Harvell's extraction was also necessary because Harvell was charged with making threats, a major violation, and a bed move to segregated housing is required while charges are pending to prevent the inmate from carrying out his threats. Due to Harvell's charges of threats and disobedience, Defendants were required to assume that Harvell was dangerous. *See Soto*, 744 F.2d at 1267 (indicating that cell extractions are inherently dangerous because inmates that disobey rules are "unpredictable—passive at one time and aggressive the next moment," and "injuries occur to the staff even when they enter the cell in the ERU [Emergency Response Unit] gear"). Harvell's actions therefore were reasonably perceived as a threat to safety and security by Defendants.

Accordingly, the fourth factor also weighs heavily in Defendants' favor.

Fifth, Defendants repeatedly made efforts to temper the severity of the forceful response. Harvel was repeatedly ordered to pack up his property and move to segregated housing but refused to comply. 2-ER-150-56, 201, ECF Nos. 48-2 at 3, 55 at 18-24. Harvel was then repeatedly ordered to comply with orders to submit to restraints, but Harvel continued to resist. 2-ER-150-57, ECF No. 55 at 18-25; Video Recording, TI 1:25-4:40. Before employing force, officers discussed alternatives to hands-on force. They determined that because Harvell was on the desensitized list, that chemical and electronic uses of force could not be used, and therefore hands-on force was the only viable option that could be used to extract Harvell. Video Recording, TI 0:30-0:37.

Each officer was instructed as to their duties with respect to the use of force and ensured that medical would present in the event of injury. 2-ER-154, ECF No. 55 at 22; Video Recording, TI 0:0-0:50. After lining up officers, in full CERT gear, in front of the window on Harvell's cell door, Harvell was given repeated chances to voluntarily submit to restraints to avoid the use of force. Video Recording, TI 1:25-3:05. After the ninety seconds it took to extract Harvell from his cell, Harvell was examined by medical within minutes. 2-ER-154, ECF No.

55 at 22; Sealed 3-ER-278; Video Recording, TI 2:55-13:30. Upon examination, Harvell's injuries were so minor that medical was able to release Harvell to be moved to segregated housing. 2-ER-154, ECF No. 55 at 22; Sealed 3-ER-278; Video Recording, TI 10:45-13:30. Defendants therefore made substantial efforts to temper the severity of their response, but to no avail. Harvell simply and intentionally refused to follow Defendants' orders.

In *Stenzel v. Ellis*, 916 F.2d 423, 427 (8th Cir. 1990), the Eighth Circuit asked the inmate "three times to uncover while sleeping [as covers prevented jailer's from determining whether inmate was present] and [the inmate] finally unequivocally refused, making it necessary for the jailers to move him forcefully." The jailers forcibly removed [the inmate] from his bunk, pulled him by his hair, and shoved him to the floor." *Id.* at 425. "While [the inmate] was face down on the floor, [the officer] pulled back a finger of [the inmate's] left hand and [another officer] had his knee in the small of [the inmate's] back." *Id.* The inmate was then "pulled to his feet" and "was smashed into the bars on the way out." *Id.* The Eighth Circuit held that although "the conduct [the inmate] allege[d] may have given rise to a state law cause of action for battery, it does not rise to the level of a constitutional violation." *Id.* at 427. The court reasoned that '[h]ad the jailers simply wanted to

assault [the inmate], there was no reason to make three passes by the cell and then warn him of the consequences of his behavior." *Id.*

Similarly, had Defendants wanted to use force for the purpose of maliciously and sadistically causing harm, there was no reason for Defendants to repeatedly request Harvell to comply with their order to move to segregated housing and to submit to restraints, or for Defendants to consider alternatives to hands on force, or for Defendants to request medical to be present. Instead, these efforts to temper the severity of the force applied establish that Defendants applied force in a good faith effort to maintain and restore discipline.

Accordingly, the fifth factor also weighs heavily in favor of Defendants. *See Howard*, 465 Fed. Appx. at 670 (holding prison officials did not violate the Eighth Amendment by using force when an inmate "disobeyed an order" because "force [was] "applied in a good faith effort to maintain or restore discipline"); *Eccleston*, 168 Fed. Appx. at 761 (holding prison officials did not violate the Eighth Amendment when force "was only used after [the inmate] repeatedly did not follow orders to leave his cell").

As all factors favor Defendants, the use of force by Defendants was necessary and ***<u>not</u>*** excessive. Accordingly, Defendants did not violate the Eighth Amendment, and the district court erred when denying Defendants' motion for summary judgment.

### 2. Harvell Failed to Allege Facts Establishing a Sadistic or Malicious Purpose for the Force Applied

Harvell offered no evidence establishing that any Defendant had a sadistic or malicious purpose for the force applied. Harvell does not allege any reason for the use of force other than his own misconduct, and continued refusal to comply with officers' orders to move to segregated housing and submit to restraints. In *Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001), this Court held to meet this subjective element, a plaintiff "must put forward specific, nonconclusory fact[s] . . . that establish improper motive causing cognizable injury." Harvell, however, offers no such evidence because Harvell intentionally and repeatedly disobeyed orders to move to segregated housing and to submit to restraints, which was the sole cause for the use of force. *See Wilkins*, 559 U.S. at 40 (explaining that plaintiff "will ultimately have to prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline'"); *Jeffers*, 267 F.3d at 911 (holding inmate failed to establish the use of force "was malicious or sadistic" when the facts are "not necessarily inconsistent" with a "good-faith attempt to bring the disturbance under control"); *Allen*, 253 Fed. Appx. at 659 (holding prisoner "failed to raise a triable issue that the defendants possessed malicious and sadistic intent" when defendants

employed force "in an effort to restore discipline"); *Rodriguez,* 407 Fed. Appx. at 125–26 (same).

Defendants did not violate the Eighth Amendment because the force applied was necessary due to Harvell's repeated intentional refusal to obey orders to move to segregated housing and to submit to restraints, and Harvell failed to point to any evidence in the record establishing a sadistic or malicious purpose for the force applied. *See Keller v. Trefz*, 66 Fed. Appx. 44, 46, 2003 WL 1870718, at *1 (7th Cir. 2003) (holding inmate failed to establish that officers violated the Eighth Amendment, by asserting that officers "gratuitously slammed [inmate's] head against the floor and, using a wrist restraint, violently and repeatedly yanked his body against the cell door," which "resulted in pain, abrasions, scars, scratches, and soreness" because the inmate did "not dispute that he failed to comply with lawful orders and resisted the officers," and "no evidence has been submitted to suggest that the amount of force used by [the officers] was other than a good faith effort to restore discipline").

### 3. Harvell Failed to Allege Facts Establishing that the Force Personally Employed by Officer Pickens Was Excessive

Harvell must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that

a plaintiff). To "be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original). "In order to prevail and recover damages against any of the named prison officials," Harvell "must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Id.* at 634.

In *Farmer v. Brennan*, 511 U.S. 825, 828, 832, 837 (1994), the Supreme Court held "deliberate indifference" can only be established if the prison official "knowingly and unreasonably disregard[s] an objectively intolerable risk of harm." "[D]eliberate indifference entails something more than mere negligence." *Id.* at 835. The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison "official's failure to alleviate a

significant risk that he should have perceived but did not" does not establish deliberate indifference. *Farmer*, 511 U.S. at 838.

Harvell does not assert that Officer Pickens hit, punched or otherwise abused Harvell in any way. Instead, the district court premised Officer Pickens' liability based on her supposed failure to intervene to prevent Officers Brown or Rigney from punching Harvell. 1-ER-13-14, ECF No. 63 at 12-13. The district court, however, merely speculates that Officer Pickens knew that Harvell was going to be punched, then speculates that she could abandoned her duty to restrain Harvel, thus placing other officers in danger, and then speculates that if she did abandon her duty, she would have been able to prevent the alleged punch, and then speculate that she could have taken such action in the few brief seconds these punches supposedly occurred. Such speculation upon speculation cannot establish that Officer Pickens knew that Harvell faced a risk of excessive force and could have done something to prevent it. *See Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004) (holding that "conclusion [that] was merely speculative" could not establish that a defendant "disregarded "disregarded [a] serious and known risks," because the witness "lacked any insight into [defendant's] subjective knowledge"); *Hughes*, 31 F.4th at 1223 (holding officers "cannot be held liable for fleeting acts which they did not commit, came without warning, and could not have prevented").

As Harvell does not allege that Officer Pickens employed excessive force, that she knew excessive force was to be employed, or had any ability to prevent the alleged excessive force, Officer Pickens did not violate the Eighth Amendment.

### C. Harvell Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law

The district court wrongly concluded that disputed facts supposedly prevented the Court from ruling on qualified immunity. 1-ER-15, ECF No. 63 at 14. In *Carley*, this Court held that the district court erred when ruling that the defendant was "not entitled to qualified immunity at this time" simply because there was "still a genuine dispute of material fact as to whether" the defendant violated the constitution. 103 F.4th at 660. The Court reasoned that it "is not sufficient for the district court to conclude that the plaintiff has proven a constitutional injury, or that there are material facts in dispute that, if proven, would establish a constitutional violation" because the "court must proceed to the second step to decide whether the violation was clearly established at the time of the violation." *Id.* The district court erred because it failed to take this essential second step.

Neither Harvell, nor the district court, has cited any Supreme Court or circuit authority which squarely governs the facts of this case and would, beyond debate, clearly establish a violation of the Eighth

Amendment. In *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), this Court held that resolving dispositive motions "based on qualified immunity" requires conducting an "individualized analysis . . . , examining each of the . . . elements of the alleged" cause of action, when determining whether the law was clearly established. Harvell, however, cannot point to any established precedent establishing that he meets each element of his Eighth Amendment claim.

No court has held that employing force to extract an inmate from his cell after an inmate repeatedly and intentionally refuses to follow direct orders move to segregated housing and to submit to restraints violates the Eighth Amendment, especially when the force was necessary and reasonably applied in a good faith effort to maintain or restore discipline. To the contrary, as set forth above, this Court and other circuit courts have repeatedly held that refusal to follow orders justifies the use of force. Harvell simply fails to point to facts showing that Defendants use of force was "excessive and unnecessary," or that Defendants "acted maliciously and sadistically," both of which are required to establish an Eighth Amendment violation.

Contrary to the mandate in *Carley*, 103 F.4th at 600-61, the district court cited *Hudson*, 503 U.S. at 6-7, which is the only authority cited, for the broad general proposition that "a prison official violates the constitution when force is used maliciously or sadistically to cause

harm and not in a good faith effort to maintain or restore discipline." 1-ER-15, ECF No. 63 at 14. The ruling in *Hudson*, however, does not involve facts similar to this case, and therefore cannot establish that Defendants violated the Eighth Amendment beyond debate. Instead, *Hudson* involved unprovoked force while escorting an inmate already in handcuffs and shackles, and the Supreme Court never reached a conclusion as to whether the force applied was excessive. 503 U.S. at 4-12. The five factors outlined by *Hudson*, which the district court did not analyze, all weigh in favor of Defendants and establish that the force applied was reasonably necessary, as set forth in the Supreme Court and circuit court cases cited.

Harvell also failed to meet his burden, required by *Wilkins* and *Jeffers*, to put forth specific, nonconclusory facts establishing that Defendants "acted maliciously and sadistically," which also required to establish a violation of the Eighth Amendment. Harvell therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation").

Accordingly, Defendants are shielded by qualified immunity, and the district court erred when denying Defendants' motion to dismiss. This Court should therefore reverse the district court's judgment and order the district court to grant Defendants' motion to dismiss because they are shielded by qualified immunity.

### D. This Court Must Accept as True NDOC Factual Findings Supported by Substantial Evidence

As extensively set forth, even if this Court accepts as true Harvell's version of the facts, supported by admissible evidence, Defendants are entitled to summary judgment as a matter of law. Nevertheless, under the well-established principles of administrative law, this Court is required to accept as true NDOC's factual findings used to deny Harvell's grievances, because those findings were supported by "some" or "substantial" evidence.

In *Woodford v. Ngo*, 548 U.S. 81, 84 (2006), the United State Supreme Court explained that the "centerpiece of the PLRA's [Prisoner Litigation Reform Act's] effort to reduce the quantity of prisoner suits is an invigorated exhaustion provision, [42 U.S.C.] § 1997e(a)." The Court explained that "[e]xhaustion of administrative remedies serves two main purposes." *Id.* at 89. "First, exhaustion protects administrative agency authority." *Id.* Exhaustion required by the "PLRA attempts to eliminate unwarranted federal-court interference with the

administration of prisons and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 93. The Court noted that this "is particularly important in relation to state corrections systems because it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id*.at 94. Indeed, the Supreme Court has repeatedly held that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment," and avoid "the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Sandin v. Conner*, 515 U.S. 472, 482 (1995); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989) (acknowledging "the expertise of [prison] officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management," and therefore the "Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world").

"Second, exhaustion promotes efficiency." *Woodford*, 548 U.S. at 89. "Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in

federal court." *Id.* "[E]ven where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.* "As a general rule court should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Id.* at 90. Accordingly, by requiring exhaustion of administrative remedies, the PLRA adopted the "well established . . . jurisprudence of administrative law." *Id.* at 88.

One of those "well established" administrative law principles is that the "reviewing court's function is limited." *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 153 (1946), cited with approval in *Woodford,* 548 U.S. at 90. In *US West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1117 (9th Cir. 1999), this Court held that while a "state agency's interpretation of a federal statute is considered de novo," "all other issues [are considered] under an arbitrary and capricious standard." *See also Centennial Puerto Rico License Corp. v. Telecommunications Regulatory Bd. of Puerto Rico*, 634 F.3d 17, 26 (1st Cir. 2011) (compiling cases from other circuits reaching the same result); *MCI Worldcom Communications, Inc. v. BellSouth Telecommunications, Inc.*, 446 F.3d 1164, 1170 (11th Cir. 2006) (same). Under the arbitrary and capricious standard, a state agency's "findings

of fact are reviewed for substantial evidence." *US West Communications, Inc. v. Jennings*, 304 F.3d 950, 958 (9th Cir. 2002). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Construction Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). The court may not "weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists." *Id.*

Here, when ruling on Harvell's grievances, NDOC expressly found that Harvell "refused orders to submit to restraint," the officers "used the minimal amount of force to get [Harvell] into restraints," and therefore "the use of force was reasonable." 2-ER-77, 159; ECF Nos. 55 at 27, 59-2 at 13. These findings were supported by NDOC's investigation, officer reports, and the video.

As NDOC findings are supported by substantial evidence, this Court must accept these findings as true. To do otherwise would effectively "turn the [PRLA's exhaustion requirement] into a useless appendage." *Woodford*, 548 U.S. at 93. Prisons would not be given a fair opportunity to correct their mistakes if a court could "topple over"' their findings of fact supported by substantial evidence simply because the court drew a different conclusion. Similarly, the record developed

by prisons would become useless if courts could simply ignore the record with the prison's findings of fact. Additionally, ignoring a prison official's findings of facts would impinge on the broad discretion that prison officials should be afforded and convert courts into prison wardens, a position which courts are ill equipped to undertake. There is simply no justification for failing to afford prisons the same deference provided to other state agencies when reviewing their findings of fact, especially when the Supreme Court has repeatedly held that a state has no stronger interest than the administration of its prisons.

Accordingly, this Court should adopt NDOC's findings of fact, supported by substantial evidence, when ruling on summary judgment. Nevertheless, even accepting Harvell's version of the facts, supported by admissible evidence, Defendants are still entitled to summary judgment as a matter of law because they are shielded by qualified immunity.

## VIII. CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment denying Defendants' motion for summary judgment,

///

///

///

///

///

and remand with instruction to grant Defendants' motion because Defendants are entitled to qualified immunity.

Respectfully submitted September 16, 2025,

AARON D. FORD
Attorney General

By: *_/s/ Chris Davis_*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General
*Attorneys for the Defendants-Appellants*

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 9932 words.

Respectfully submitted September 16, 2025,

AARON D. FORD
Attorney General

By: */s/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLANTS' OPENING BRIEF & DEFENDANTS-APPELLANTS' EXCERPTS OF RECORD** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic filing system on September 16, 2025.

Participants in the case who are registered users will be served by the appellate electronic file system, as follows:

Samuel Weiss, Esq.
Rights Behind Bars
416 Florida Avenue, NW, No. 26152
Washington, DC 20001
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee*

*/s/ Kimalee Goldstein*
An employee of the Office of the
Nevada Attorney General