No. 25-719

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SEAN HARVELL,

*Plaintiff-Appellee,*

v.

CHET RIGNEY, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Nevada
No. 3:23-cv-00101-CSD
Hon. Craig S. Denney

## PLAINTIFF-APPELLEE'S ANSWERING BRIEF

Sam Weiss
sam@rightsbehindbars.org
RIGHTS BEHIND BARS
1800 M Street N.W. FNT 1 #33821
Washington, DC 20033
Telephone: (202) 455-4399

Jordan D. Segall (SBN 281102)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
jordan.segall@mto.com
Telephone: (213) 683-9100

Miles W. Unterreiner (SBN 347959)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
miles.unterreiner@mto.com
Telephone: (415) 512-4000

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................... 1

STATEMENT OF JURISDICTION .......................................... 2

ISSUES PRESENTED ............................................................. 2

STATEMENT OF THE CASE .................................................. 3

    A.    The Parties ........................................................................ 3

    B.    Factual History ................................................................. 3

        1.    Defendants Plan to Enter Harvell's Cell ...................... 3

        2.    Defendants Gather Outside Harvell's Cell ................... 4

        3.    Defendants Enter Harvell's Cell .................................. 7

        4.    Defendants Repeatedly Punch Harvell After He Is Fully Restrained and Non-Resisting ........................ 7

    C.    Procedural History .............................................................. 9

SUMMARY OF THE ARGUMENT ........................................ 11

    A.    The District Court Correctly Denied Defendants Qualified Immunity ................................................. 12

    B.    Defendants' Counterarguments Fail ..................................... 13

        1.    Defendants Forfeit Any Argument That They Did Not Repeatedly Punch a Fully Restrained Inmate ..... 13

        2.    This Court Lacks Jurisdiction to Review the District Court's Determination That A Genuine Dispute of Material Facts Exists ................................. 14

        3.    Defendants Claim a Video Shows Something It Does Not Show ............................................................. 15

        4.    A Reasonable Jury Could Conclude that Punching a Fully Restrained Prisoner Is Excessive ................................................................... 16

        5.    Defendants' Remaining Factual Contentions Are Irrelevant ................................................................... 17

i

6.    Defendants' Administrative Deference Argument Is Forfeited and, In Any Event, Wrong ........................ 17

7.    Defendants Forfeit Any Exhaustion Argument .......... 18

STANDARD OF REVIEW .................................................................... 18

ARGUMENT ......................................................................................... 19

I.   Defendants Repeatedly Punched Harvell After He Was Fully Restrained, and Defendants Cannot Relitigate That Factual Dispute on Interlocutory Appeal ..................................................... 19

    A.    Defendants Forfeit Any Argument That They Did Not Repeatedly Punch Harvell After Fully Restraining His Arms and Legs ............................................................................. 19

    B.    To the Extent Defendants Challenge the District Court's Material Factual Conclusions, This Court Lacks Jurisdiction to Hear the Challenge ........................... 22

    C.    *Scott v. Harris* Does Not Alter the Analysis Because the Video Does Not "Blatantly Contradict" Harvell's Account of the Facts ........................................................... 24

II.   A Reasonable Jury Could Conclude That Defendants' Conduct Violated the Eighth Amendment .................................................... 26

    A.    Legal Principles: Eighth Amendment .................................. 26

    B.    A Reasonable Jury Could Easily Conclude that Harvell's Beating Violated the Eighth Amendment ............. 28

        1.    First Element: Intent to Cause Harm ......................... 28

        2.    Second Element: Excessive Force ............................... 31

        3.    Third Element: Injury ................................................. 33

III.   It Was Clearly Established At The Time Harvell Was Assaulted that Defendants' Conduct Violated the Eighth Amendment ................................................................................... 34

    A.    Legal Principles: Clearly Established Rights ...................... 34

    B.    This Court's Precedent Clearly Establishes That Rigney's and Brown's Conduct Was Unlawful .................... 36

ii

      1.    The Facts in *Manley* are Materially Similar to the Facts in This Case ........................................................ 37

      2.    The Facts in *Hughes* are Materially Similar to the Facts in This Case ................................................. 39

      3.    The Differences Between *Hughes* and This Case Are Immaterial ......................................................... 45

  C.  This Is an "Obvious" Case in Which Officers' Actions Clearly Violated the Constitution Even Absent a Materially Similar Precedent ................................................ 49

  D.  Defendants' Only Published Cases Are Factually Dissimilar Out-of-Circuit Authority ...................................... 51

      1.    All of Defendants' Published Cases Are Out-of-Circuit and Therefore Irrelevant ................................. 51

      2.    None of the Cases Defendants Cite Are Materially Similar ........................................................ 52

      3.    Defendants' Ninth Circuit Cases Are All Unpublished and Factually Dissimilar ......................... 55

IV.  Officer Pickens Is Not Entitled to Qualified Immunity ................ 56

  A.  Legal Principles: Duty to Intervene ..................................... 57

  B.  Officer Pickens Failed to Intervene to Stop a Clear Constitutional Violation ...................................................... 58

V.  Defendants' Remaining Factual Arguments Are Irrelevant ......... 62

  A.  What Happened Before Harvell Was Restrained is Legally Irrelevant ............................................................... 62

  B.  Defendants' Argument About Harvell's Injuries is Irrelevant ............................................................................ 64

VI.  Defendants' Administrative Deference Argument Is Both Forfeited and Meritless ............................................................... 65

VII.  Defendants Do Not Argue that Harvell Failed to Exhaust Administrative Remedies ............................................................. 67

CONCLUSION ....................................................................................... 68

CERTIFICATE OF COMPLIANCE ...................................................... A1

iii

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Allen v. Bosley*,
253 F. App'x 658 (9th Cir. 2007) ..........................................................56

*Ames v. King Cnty., Washington*,
846 F.3d 340 (9th Cir. 2017)................................................... 2, passim

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003)................................................................35

*Avila v. Los Angeles Police Dep't*,
758 F.3d 1096 (9th Cir. 2014)........................................... 14, 18, 22, 67

*Avina v. United States*,
681 F.3d 1127 (9th Cir. 2012)..............................................................32

*Ballentine v. Tucker*,
28 F.4th 54 (9th Cir. 2022) .................................................................36

*Blaylock v. City of Philadelphia*,
504 F.3d 405 (3d Cir. 2007) ................................................................25

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ......................................................................35, 46

*Carrillo v. Cnty. of Los Angeles*,
798 F.3d 1210 (9th Cir. 2015)..............................................................52

*Chavez v. Wynar*,
421 F. Supp. 3d 891 (N.D. Cal. 2019)..................................................52

*Cunningham v. Gates*,
229 F.3d 1271 (9th Cir. 2000)..............................................................57

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001)................................................................3

iv

*Eccleston v. Oregon ex rel. Oregon Dep't of Corr.*,
   168 F. App'x 760 (9th Cir. 2006) .......................................................56

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ...............................................................................20

*Est. of Aguirre v. County of Riverside*,
   29 F.4th 624 (9th Cir. 2022) ..............................................................17

*Est. of Anderson v. Marsh*,
   985 F.3d 726 (9th Cir. 2021) .......................................................20, 30

*Est. of Hernandez by & through Hernandez v. City of Los Angeles*,
   139 F.4th 790 (9th Cir. 2025) ............................................................63

*Estelle v. Gamble*,
   429 U.S. 97 (1976) ...............................................................................20

*Evans v. Skolnik*,
   997 F.3d 1060 (9th Cir. 2021) .....................................................34, 52

*Friends of Yosemite Valley v. Kempthorne*,
   520 F.3d 1024 (9th Cir. 2008) ............................................................20

*Furnace v. Sullivan*,
   705 F.3d 1021 (9th Cir. 2013) ............................................................66

*George v. Morris*,
   736 F.3d 829 (9th Cir. 2013) ...............................................12, passim

*Hernandez v. Mesa*,
   582 U.S. 548 (2017) .............................................................................48

*Hoard v. Hartman*,
   904 F.3d 780 (9th Cir. 2018) ...............................................26, passim

*Hope v. Pelzer*,
   536 U.S. 730 (2002) .............................................................................35

*Hopkins v. Bonvicino*,
   573 F.3d 752 (9th Cir. 2009) ..............................................................52

*Howard v. Nunley,*
  465 F. App'x 669 (9th Cir. 2012) ..................................................... 56

*Hudson v. McMillian,*
  503 U.S. 1 (1992) ......................................................... 32, 46, 50

*Hughes v. Rodriguez,*
  31 F.4th 1211 (9th Cir. 2022) ................................................. 1, passim

*Ioane v. Hodges,*
  939 F.3d 945 (9th Cir. 2018) .................................................... 34, 39

*Isayeva v. Sacramento Sheriff's Dep't,*
  872 F.3d 938 (9th Cir. 2017) .................................................... 2, passim

*Jeffers v. Gomez,*
  267 F.3d 895 (9th Cir. 2001) ............................................................ 30

*Jones v. Blanas,*
  393 F.3d 918 (9th Cir. 2004) ............................................................ 20

*Lees v. Mariscal,*
  No. 19-CV-01603-HSG, 2022 WL 4591794 (N.D. Cal. Sept.
  29, 2022) ....................................................................... 29, 30

*Liston v. Cnty. of Riverside,*
  120 F.3d 965 (9th Cir. 1997) ............................................... 13, 32, 67

*Manley v. Rowley,*
  847 F.3d 705 (9th Cir. 2017) ................................................ 12, passim

*Mendocino Env't Ctr. v. Mendocino Cnty.,*
  192 F.3d 1283 (9th Cir. 1999) .................................................... 28, 29

*Peck v. Montoya,*
  51 F.4th 877 (9th Cir. 2022) .................................................... 57, 60

*Perttu v. Richards,*
  605 U.S. 460 (2025) .......................................................................... 68

*Robins v. Meecham,*
  60 F.3d 1436 (9th Cir. 1995) ............................................... 57, 58, 59

*Rodriguez v. Cnty. of Los Angeles*,
  891 F.3d 776 (9th Cir. 2018) ................................................ 27, passim

*Rodriguez v. Elmore*,
  407 F. App'x 124 (9th Cir. 2010) ...................................................... 56

*Scott v. Harris*,
  550 U.S. 372 (2007) ............................................................... 4, 15, 24

*Skinner v. Cunningham*,
  430 F.3d 483 (1st Cir. 2005) ...................................................... 52, 53

*Soto v. Dickey*,
  744 F.2d 1260 (7th Cir. 1984) ................................................... 54, 55

*Spencer v. Pew*,
  117 F.4th 1130 (9th Cir. 2024) ........................................... 34, passim

*Squaw Valley Dev. Co. v. Goldberg*,
  395 F.3d 1062 (9th Cir. 2005) ......................................... 18, 20, 65, 68

*Stenzel v. Ellis*,
  916 F.2d 423 (8th Cir. 1990) ...................................................... 53, 54

*Tobias v. Arteaga*,
  996 F.3d 571 (9th Cir. 2021) ........................................... 57, 59, 60, 61

*Trevino v. Thaler*,
  569 U.S. 413 (2013) ...................................................................... 64

*Tuuamalemalo v. Greene*,
  946 F.3d 471 (9th Cir. 2019) .......................................................... 21

*United States v. Lanier*,
  520 U.S. 259 (1997) ................................................................. 35, 49

*Watts v. McKinney*,
  394 F.3d 710 (9th Cir. 2005) ..................................................... 26, 29

*Wilkins v. Gaddy*,
  559 U.S. 34 (2010) .............................................................. 28, passim

**FEDERAL STATUTES**

42 U.S.C. § 1983..........................................................................9, 17, 66

**RULES - OTHER**

Ninth Circuit Rule 36-3..................................................................55, 56

**INTRODUCTION**

Nevada correctional officers punched Plaintiff-Appellee Sean Harvell multiple times while he was fully restrained, seriously injuring his head and eyes. As the district court correctly held, and as binding precedent in this circuit makes clear, "a reasonable jury could find" that excessive force was used against Harvell in violation of the Eighth Amendment, ER 10, and the correctional officers—Defendants-Appellants here—are not entitled to qualified immunity, ER 15.

Defendants' appeal from those holdings is meritless. Defendants ignore the key fact in this case: that, taking the evidence in the light most favorable to Harvell, Harvell "was beaten after being fully shackled." ER 10. Defendants do not argue that the Eighth Amendment permits an officer to do that, and do not meaningfully argue that a reasonable officer could believe it did. For good reason: this Court has already held that "it is clearly established law that beating a handcuffed convict violates the Eighth Amendment." *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022).

This Court should dismiss the appeal in part, deny the appeal in part, and remand the cause for trial.

1

## STATEMENT OF JURISDICTION

This is an interlocutory appeal from the district court's denial of qualified immunity. This Court has jurisdiction under the collateral order doctrine "to decide whether, taking the facts in the light most favorable to the non-moving party, the defendants are entitled to qualified immunity." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). This Court "do[es] not," however, "have jurisdiction to decide whether there is a genuine issue of material fact" for trial, *id.*; "[w]here the district court has determined the parties' evidence presents genuine issues of material fact, such determinations are not reviewable on interlocutory appeal." *Ames v. King Cnty., Washington*, 846 F.3d 340, 347 (9th Cir. 2017).

## ISSUES PRESENTED

1. Whether this Court has jurisdiction to review the district court's determination that there is a genuine issue of material fact for trial.

2. Whether the district court correctly denied qualified immunity to Nevada correctional officers Rigney and Brown on Harvell's Eighth Amendment excessive-force claim.

3.    Whether the district court correctly denied qualified immunity to Nevada correctional officer Pickens on Harvell's Eighth Amendment failure-to-intervene claim.

## STATEMENT OF THE CASE

### A.    The Parties

Plaintiff-Appellee, Sean Harvell, is an inmate with the Nevada Department of Corrections, or "NDOC." ER 224. At the time of the events in this case, he was incarcerated at Ely State Prison in Ely, Nevada. ER 224.

Defendants-Appellants—Officers Chet Rigney, Shane Brown, and Madeline Pickens—are correctional officers with the NDOC. ER 151, 153, 155. At the time of the events in this case, they were stationed at Ely State Prison, where Mr. Harvell was incarcerated. *Id.*

### B.    Factual History

Viewing the evidence "in the light most favorable to the nonmoving party," *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)—here, Mr. Harvell—the facts in this case are as follows.

### 1.    Defendants Plan to Enter Harvell's Cell

On June 2, 2022, Officers Rigney, Brown, and Pickens—members of a cell extraction team, or "CERT," at the prison—planned to enter

Harvell's cell to move him to segregated housing. ER 151, 153, 155, 201, 228.

Video footage captured what happened next—though not, importantly, the key disputed moments at issue in this case—and this Court can (and should) consider events clearly depicted on the videotape as authoritative at summary judgment. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The videotape ("VR")[1] shows the following events.

### 2. Defendants Gather Outside Harvell's Cell

First, a group of officers gathers in advance of the cell extraction. VR 00:00–01:30. Officers Rigney, Brown, and Pickens are verbally identified as part of the extraction team. VR 00:10–00:27. The officers then approach Harvell's cell. VR 00:00–01:30. Once they arrive, officers yell at Harvell to submit to restraints, VR 01:33, and command him to turn around and face the back of the cell, VR 01:44–01:51.

It cannot be discerned from the videotape what Harvell did in response, because the video does not capture Harvell, who remains

---

[1] The videotape was Exhibit A to Defendants' Motion for Summary Judgment below, ER 178, 198, and Appellants have moved to transmit the videotape to this Court, *see* Dkt. 20. Appellee supports that motion.

behind the cell door.[2]  VR 01:30–2:00.  Harvell, however, alleges in his sworn complaint that "when CERT arrived I explained there was no need for force" because he was going to "cuff up & come out."  ER 228.  Although this oral statement by Harvell cannot be clearly heard on the videotape, Defendants concede that Harvell "indicated that restraints were not necessary because he was going to come out anyway."  AOB 4.[3]

Officers nonetheless pull out handcuffs, VR 01:58, and Harvell— who had promised to "cuff up," ER 228—extends his hands through the cell door to allow them to be handcuffed.  VR 02:01.  Officers then move in front of the video camera and it becomes impossible to discern what is happening to Harvell's hands.  VR 02:04–02:38.  But Harvell can be heard yelling, *id.*, and he expresses pain, stating that officers "broke my fingers."  VR 02:24.[4]

---

[2] An officer announces orally that in his view, "inmate has refused to turn," VR 01:51, but that does not actually appear on the videotape.

[3] Defendants claim that Harvell was ordered to submit to restraints and "refused," AOB 4, but the videotape does not show this.

[4] Officers announce that Harvell should "stop resisting" the handcuffs VR 02:13–02:15, but no resistance by Harvell is evident on the videotape.

5

The officers—who are still standing outside the cell, still with no view of Harvell visible on the video—command Harvell to kneel on the ground inside his cell. VR 02:28–02:36. Harvell's cell door opens, and he can be seen kneeling, facing away from the officers (as officers had commanded him to do)—with both his hands handcuffed and a leash attached to the cuffs. VR 02:45. Defendants concede that officers were "able to restrain both [of Harvell's] wrists" by this time. AOB 5.

Officers next command Harvell to "sit up," VR 02:48, and Harvell can be seen moving his body upwards immediately thereafter— although it is not clear whether this movement reflects Harvell attempting to comply with the verbal order to "sit up," whether it reflects Harvell being physically pulled upward by an officer, or neither. VR 02:49. Whatever the reason for his initial upward movement, Harvell then yells in pain and his body moves back downward again. VR 02:50–02:51. It is unclear from the video whether this is because attempting to sit up from the kneeling position caused Harvell pain, or for some other reason. *Id.* Throughout this time, the video (again) does not depict any resistance by Harvell. VR 02:50–02:56.

6

### 3. Defendants Enter Harvell's Cell

An officer then announces that Harvell "need[s] to follow the officer's orders or force will be utilized!" VR 02:56–02:59. (The video does not show Harvell failing to follow any officer's orders.) As the officer completes the word "utilized," the crowd of officers charges into Harvell's cell—according to Defendants, because Harvell had run to the back of his cell (although this does not appear on the videotape). VR 02:59–03:02; AOB 6. Harvell can soon be heard yelling in pain, and the crowd of officers can be seen kneeling over Harvell, who is out of the camera's view. VR 03:02–3:26. It cannot be discerned from the videotape what the officers are doing to Harvell, and—once again—no resistance by Harvell appears on the videotape. VR 03:00–04:30.

### 4. Defendants Repeatedly Punch Harvell After He Is Fully Restrained and Non-Resisting

Defendants concede that after they entered Harvell's cell, they also restrained Harvell's legs, and that there were at least 40 seconds of time during which Harvell's arms and legs were fully restrained before officers removed him from his cell. *See* AOB 7 (conceding that officers restrained Harvell's legs 50 seconds after entering his cell and carried him out 90 seconds after entering his cell). It is impossible to tell from

7

the videotape what officers were doing to Harvell during that critical 40-second window (or at any time after the officers entered Harvell's cell). VR 03:00–04:30. Mr. Harvell's sworn complaint, however, states that "once leg restraints were on," officers Rigney and Brown "pushed me forward to the ground & began to punch on me again & again"— "splitting my head open" and "causing damage to my eyes." ER 228. Defendants do not argue that Harvell offered any resistance to the officers in his cell after his legs were restrained, AOB 7, and none appears on the videotape.

The officers eventually pull Harvell out of his cell, VR 04:30– 04:39, and an officer announces that "hands-on force was utilized inside the cell," VR 05:04. Harvell is temporarily placed in a different cell to strip down. VR 05:15–07:20. When Harvell emerges from the temporary cell, his face is visibly injured. VR 09:45. Officers lead him away in cuffs. VR 09:45–10:00.

A post-incident medical report issued that same day (June 2, 2022) showed that Mr. Harvell sustained lacerations with swelling on both sides of his face; minimal bleeding on both sides of the face; and bruising around the bridge of his nose. ER 278 (sealed); ER 8. Eight

8

days later, Mr. Harvell was seen for an eye exam, which determined that Mr. Harvell had bruising around his eyes.  ER 280 (sealed); ER 8.

### C. Procedural History

Mr. Harvell filed a pro se complaint under 42 U.S.C. § 1983 alleging—as relevant here—Eighth Amendment excessive force claims against Rigney, Brown, and Pickens.  ER 224, 228, 230.  The Complaint asserted that Rigney and Brown repeatedly punched Harvell after his arms and legs were restrained, and that Pickens was part of the cell extraction team that "used excessive force." *Id.*[5]

Defendants moved for summary judgment on the ground of qualified immunity.  ER 180–96.  On January 6, 2025, the district court denied summary judgment to Rigney, Brown, and Pickens.  ER 18.

As to Rigney and Brown—the Defendants who Harvell alleged directly carried out the post-restraint beating—the district court held that there were disputed factual issues foreclosing those Defendants' assertions of qualified immunity.  ER 10, 15.  The district court

---

[5] The Complaint also alleged two claims not at issue in this appeal: an Eighth Amendment claim against an officer named Cooke, and a First Amendment retaliation claim against an officer named Gutierrez.  ER 227, 228, 230, 232.

identified the key factual dispute at issue as whether "Plaintiff was beaten after being fully shackled, as he alleges in his sworn complaint," and held that if he had been, "then a reasonable jury could find that the force used was excessive." ER 10. The Court concluded that there was a genuine dispute of material fact on that point: "the court cannot determine with certainty from the video what happened while the officers were in Plaintiff's cell. Because the view into the cell is obstructed, it is unclear if Plaintiff did, in fact, resist leg restraints. Further, the court is unable to see whether the officers continue to use force despite Plaintiff being fully shackled. Thus, the video neither proves nor disproves the sworn statements made by Plaintiff in his complaint." ER 10.

As to Pickens—who Harvell had alleged participated in the unconstitutional cell extraction—the district court observed that Pickens' own report of the incident "states that Pickens was not merely present at the door but rather took part in the use of force incident, including helping to shackle and secure the movement of Plaintiff, placing a spit mask on his head, and transporting him to see medical staff." ER 13. Noting that officers may be liable where they fail to

10

intervene to stop a use of excessive force, the district court held that "a reasonable jury could find that Pickens had the opportunity but failed to intervene" to stop Rigney and Brown's assault on Harvell, and that "genuine disputes exist as to whether excessive force was used and, if so, whether Pickens failed to intervene." ER 13–14.

Finally, the district court concluded that the parties' key factual dispute—what the officers did to Harvell after he was fully restrained— barred all three officers' claims to qualified immunity at summary judgment. ER 15. Because "there are disputed factual issues that are necessary to determine whether Rigney, Brown, and Pickens used unconstitutional excessive force," qualified immunity was improper. ER 15.

Defendants then noticed this interlocutory appeal, limited to the denial of qualified immunity to Rigney, Brown, and Pickens. ER 262–63.

## SUMMARY OF THE ARGUMENT

This case is straightforward. It rests on two key holdings by the district court—neither of which Defendants meaningfully challenge on appeal.

11

### A. The District Court Correctly Denied Defendants Qualified Immunity

*First*, the district court correctly held that there was a genuine dispute of material fact: namely, whether Harvell was in fact "beaten after being fully shackled, as he alleges in his sworn complaint." ER 10, 15. This Court "must accept the district court's determination that there is a genuine dispute" about that question and "do[es] not have jurisdiction to decide whether there is a genuine issue of material fact." *Isayeva*, 872 F.3d at 945; *see Ames*, 846 F.3d at 347; *George v. Morris*, 736 F.3d 829, 835 n.9 (9th Cir. 2013) (citing cases).

*Second*, the district court correctly held that this material factual dispute foreclosed Defendants' claim to qualified immunity. ER 15. "[I]t is clearly established law that beating a handcuffed convict violates the Eighth Amendment." *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022). This Court has repeatedly held that summary judgment is inappropriate where the record, construed in plaintiff's favor, would support plaintiff's claim to have been beaten while already restrained. *See, e.g., Manley v. Rowley*, 847 F.3d 705, 709, 711 (9th Cir. 2017) (reversing grant of summary judgment where plaintiff claimed to have been beaten "while he was restrained in handcuffs and leg irons").

12

The district court accordingly (and correctly) observed that whether Defendants did in fact beat a fully restrained detainee was a "disputed factual issue[]" that was "necessary to determine" the case at trial, and Defendants were therefore "not entitled to qualified immunity" at summary judgment. ER 15; *see Liston v. Cnty. of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997) ("[S]ummary judgment in favor of moving defendants is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits.").

## B. Defendants' Counterarguments Fail

Defendants' opening brief does not meaningfully address either of the district court's dispositive holdings (and it forfeits a challenge to the first entirely). Defendants instead offer a series of arguments that are either irrelevant, wrong, or both.

### 1. Defendants Forfeit Any Argument That They Did Not Repeatedly Punch a Fully Restrained Inmate

First, Defendants forfeit any challenge to the district court's conclusion that there is a genuine dispute of material fact about whether Harvell was "beaten after being fully shackled." ER 10. Defendants' opening brief extensively discusses what happened *before*

13

Harvell was handcuffed and bound by leg restraints, but does not actually dispute that—when the record is construed in the light most favorable to Harvell—Officers Rigney and Brown punched Harvell *after* restraining both his arms and legs. Nor do Defendants argue that Harvell could have resisted (or did resist) officers in any manner after he was fully shackled. Those arguments are therefore forfeited. *See Avila v. Los Angeles Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) ("Arguments 'not raised clearly and distinctly in the opening brief' are waived." (citation omitted)).

### 2. This Court Lacks Jurisdiction to Review the District Court's Determination That A Genuine Dispute of Material Facts Exists

To the extent Defendants' brief can be read to challenge the district court's conclusions about the only material factual dispute in this case—whether Defendants repeatedly punched Harvell after fully restraining him—this Court lacks jurisdiction to review that dispute on an interlocutory basis. "Any decision by the district court 'that the parties' evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal.'" *George*, 736 F.3d

14

at 834 (citation omitted); *see also Isayeva*, 872 F.3d at 945; *Ames*, 846 F.3d at 347.

### 3. Defendants Claim a Video Shows Something It Does Not Show

Defendants argue that there is an exception to that rule under *Scott v. Harris*, 550 U.S. 372 (2007) because Harvell's allegations are "flatly contradicted by the video" of the cell extraction (AOB 11 & n.2)—but that is belied by the video itself.

A review of the video does not show any of the materially disputed events in this case. A crowd of officers (or Harvell's cell door) entirely blocks the camera's view of those events. As the district court correctly observed, it is impossible to "determine with certainty from the video what happened while the officers were in Plaintiff's cell," ER 10, and a "clear view of Plaintiff is not available until he is being removed from the cell, fully shackled." ER 7. Moreover, because the video's "view into the cell is obstructed, it is unclear if Plaintiff did, in fact, resist leg restraints," and an observer "is unable to see whether the officers continue to use force despite Plaintiff being fully shackled. Thus, the video neither proves nor disproves the sworn statements made by Plaintiff in his complaint." ER 10.

15

The result is that, "[e]ven accepting for the sake of argument . . . that *Scott v. Harris* is meant to establish an exception to the rules for interlocutory review" where a videotape "blatantly contradict[s]" the plaintiff's story, here there is "no videotape, audio recording, or similarly dispositive evidence that 'blatantly contradict[s]' or 'utterly discredit[s]' [Harvell's] side of the story." *George*, 736 F.3d at 835–36. The district court's factual determinations therefore remain unreviewable on interlocutory appeal. *Id.* at 835.

> ### 4. A Reasonable Jury Could Conclude that Punching a Fully Restrained Prisoner Is Excessive

Defendants argue that, even if all disputed facts *are* taken in Harvell's favor (as they must be), no reasonable jury could conclude that the force used here was excessive. AOB 17–33. That is also clearly wrong. This Court has repeatedly held that the case must go to a jury where the record would support a conclusion that officers punched an already-restrained inmate, *see, e.g., Manley*, 847 F.3d at 709, 711, and a reasonable jury could reach that conclusion here.

16

### 5. Defendants' Remaining Factual Contentions Are Irrelevant

Defendants then discuss a series of irrelevant factual disputes about issues other than the only material question in this case: whether Officers Rigney and Brown repeatedly punched Harvell after restraining him. *See infra* Section V. Those factual disputes have no bearing on this case and the Court need not consider any of them. *Id.*

### 6. Defendants' Administrative Deference Argument Is Forfeited and, In Any Event, Wrong

Defendants suggest that a federal court hearing a section 1983 suit must defer to factual findings by the state administrative agency being sued for federal constitutional violations. AOB 40–44. Defendants failed to raise that argument below, so it is forfeited. In any event, the argument is wrong. This Court has no authority to review factual disputes in this interlocutory appeal, *Isayeva*, 872 F.3d at 945; *see Ames*, 846 F.3d at 347, and the law is clear in any event that factual disputes must be resolved in Harvell's favor, not NDOC's, at summary judgment, *see Est. of Aguirre v. County of Riverside*, 29 F.4th 624, 628–29 & n.1 (9th Cir. 2022).

17

### 7. Defendants Forfeit Any Exhaustion Argument

Finally, Defendants glancingly reference the concept of "exhaustion," AOB 40, but do not argue here (and did not argue below) that Harvell failed to exhaust his administrative remedies. Any such argument is therefore forfeited. *See Avila,* 758 F.3d at 1101; *Squaw Valley Dev. Co. v. Goldberg*, 395 F.3d 1062, 1064 (9th Cir. 2005).

## STANDARD OF REVIEW

On interlocutory review of an order denying qualified immunity, this Court construes all disputed facts in the light most favorable to the nonmoving party (here, Harvell). *Isayeva*, 872 F.3d at 946. This Court then reviews *de novo* whether—if all disputed facts are taken in Harvell's favor—Defendants are still entitled to qualified immunity. *Id.*

This Court lacks jurisdiction to review the district court's determination that there is a genuine dispute of material fact for trial. *Isayeva*, 872 F.3d at 945 (citing *Ames*, 846 F.3d at 347); *George*, 736 F.3d at 834.

18

# ARGUMENT

## I. Defendants Repeatedly Punched Harvell After He Was Fully Restrained, and Defendants Cannot Relitigate That Factual Dispute on Interlocutory Appeal

The district court held that there is a genuine issue of material fact as to whether Rigney and Brown repeatedly punched Harvell after he was fully restrained, and that, construing the record in favor of Harvell's claims, they did. ER 10, 15. Defendants do not dispute that there is a genuine dispute of material fact on that question, and therefore forfeit any argument to the contrary. To the extent Defendants' opening brief *is* construed to dispute the point, this appeal should be dismissed for lack of jurisdiction.

### A. Defendants Forfeit Any Argument That They Did Not Repeatedly Punch Harvell After Fully Restraining His Arms and Legs

The district court concluded that, construing the record in the light most favorable to Harvell's claims, Harvell "was beaten after being fully shackled, as he alleges in his sworn complaint." ER 10.[6] That

---

[6] The district court treated Harvell's sworn complaint as admissible evidence for summary judgment purposes. ER 7–8 n.1. That was clearly correct: Harvell's statements were based on his personal knowledge, set forth facts that would be admissible in evidence, and

point is dispositive and, critically, undisputed in Defendants' opening brief. Defendants therefore forfeit any argument to the contrary.

Construed liberally, as it must be,[7] Harvell's sworn Complaint alleges that, after he was "in handcuffs," officers had "placed ankle restraints on my legs," and "leg restraints were on," he was "kneeling" on the floor of his cell when Officers Rigney and Brown "pushed me forward to the ground & began to punch on me again & again." ER 228, 230, 232.

---

were made under penalty of perjury. ER 228–34; s*ee Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Because Harvell's sworn complaint is, at minimum, some evidence of misconduct by officers, this Court lacks jurisdiction to consider any argument that this evidence was insufficient. *See Est. of Anderson v. Marsh*, 985 F.3d 726, 731 n.3 (9th Cir. 2021) ("we may not review on interlocutory appeal claims that a plaintiff has presented insufficient evidence" to support a claim). In any event, defendants do not argue in their opening brief (and did not argue below) that considering Harvell's sworn complaint as evidence was error, so any such argument is forfeited. *See Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008); *Squaw Valley Dev. Co.*, 395 F.3d at 1064.

[7] "A document filed *pro se* is 'to be liberally construed,' … and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Nowhere does Defendants' opening brief dispute this occurred, or argue that the district court was wrong to conclude that there is a genuine dispute of material fact about whether it happened (ER 10). Defendants concede that officers were "able to restrain both [of Harvell's] wrists" before they entered Harvell's cell (AOB 5), and that officers then "secured" Harvell's legs "with restraints" after entering his cell (AOB 7)—leaving at least a 40-second window during which Harvell's arms and legs were bound before officers removed him from his cell. AOB 7. Defendants do not argue that they did not repeatedly punch Harvell after his arms and legs were bound.[8] Nor do Defendants argue that Harvell could have resisted (or did resist) officers during that time, while both his arms and legs were fully bound by handcuffs and leg restraints. AOB 7; *see Tuuamalemalo v. Greene*, 946 F.3d 471, 477–478 (9th Cir. 2019) (court "must assume" for summary judgment

---

[8] Defendants do argue at length that Harvell failed to follow correctional officers' instructions at various points in time *before* those officers fully bound Harvell's arms and legs. *See* AOB 4–7, 12, 20, 24, 26, 27, 28, 30, 31. But Defendants do not dispute the only material factual point in the district court's decision: that, *at the time officers repeatedly punched him*, Harvell was fully shackled by both arm and leg restraints and therefore unable to resist the officers. *See infra* Section V.

purposes that "fully restrain[ed]" plaintiff "was not resisting"). Having failed to dispute these findings, Defendants have forfeited any argument to the contrary. *See Avila,* 758 F.3d at 1101 ("Arguments 'not raised clearly and distinctly in the opening brief' are waived." (citation omitted)).

## B. To the Extent Defendants Challenge the District Court's Material Factual Conclusions, This Court Lacks Jurisdiction to Hear the Challenge

To the extent Defendants' brief can be construed to dispute the district court's conclusion that there is a genuine dispute of material fact as to whether Defendants repeatedly punched Harvell after fully restraining him, that element of Defendants' appeal should be dismissed for lack of jurisdiction.

Ninth Circuit precedent is clear: "Any decision by the district court 'that the parties' evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal.'" *George,* 736 F.3d at 834 (citation omitted); *see Ames,* 846 F.3d at 347 (similar). This Court, therefore, "must accept the district court's determination that there is a genuine dispute as to the circumstances under which" a use of

22

excessive force occurred. *Isayeva*, 872 F.3d at 945; *see George*, 736 F.3d at 835 n.9 (citing cases).

The district court here made precisely such an unreviewable finding. The district court concluded that there is a genuine factual dispute as to whether Harvell "was beaten after being fully shackled, as he alleges in his sworn complaint." ER 10. The district court observed that it was impossible to "determine with certainty from the video what happened while the officers were in Plaintiff's cell"; noted that "[b]ecause the view into the cell is obstructed, it is unclear if Plaintiff did, in fact, resist leg restraints"; explained that "the court is unable to see whether the officers continue to use force despite Plaintiff being fully shackled"; and concluded that "the video neither proves nor disproves the sworn statements made by Plaintiff in his complaint." ER 10.

This Court has no power to review that conclusion, *Isayeva*, 872 F.3d at 945; *Ames*, 846 F.3d at 347, and accordingly must dismiss the appeal to the extent Defendants seek to relitigate the district court's determination that what happened in Harvell's cell presents a genuine issue of material fact for trial.

23

**C.** ***Scott v. Harris* Does Not Alter the Analysis Because the Video Does Not "Blatantly Contradict" Harvell's Account of the Facts**

To the extent Defendants suggest that *Scott v. Harris*, 550 U.S. 372 (2007), invites a different answer (AOB 11 & n.2), they are wrong.

Since *Scott v. Harris* was published in 2007, this Court has "consistently held that our court lacks the power to reassess facts on interlocutory review." *George*, 736 F.3d at 835 n.9. That is true here, where the videotape shows nothing that would blatantly contradict Harvell's story. "Even accepting for the sake of argument . . . that *Scott v. Harris* is meant to establish an exception to the rules for interlocutory review" where a videotape blatantly contradicts the plaintiff's story, here there is "no videotape, audio recording, or similarly dispositive evidence that 'blatantly contradict[s]' or 'utterly discredit[s]' [Harvell's] side of the story," and the district court's factual determination remains unreviewable on interlocutory appeal. *George*, 736 F.3d at 835–36; *see Hughes*, 31 F.4th at 1220 ("[W]hile we view the facts blatantly contradicted by the bodycam footage in the light depicted by the videotape and its audio … we must view all other facts, including

24

the allegation of the post-handcuff beating, in the light most favorable to [plaintiff].").

As the Third Circuit has explained in reconciling *Scott* with the ordinary jurisdictional rules for qualified immunity appeals, the Supreme Court in *Scott* had before it an exceptional circumstance not present here: "a videotape of undisputed authenticity depicting all of the defendant's conduct and all of the necessary context that would allow the Court to assess the reasonableness of that conduct." *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007). Moreover, "the videotape clearly supported [defendant's] version of events, and 'blatantly contradicted' [plaintiff's]." *Id.* Absent that type of exceptional circumstance, a Court of Appeal should do what it usually does when confronted with attempts by defendants to litigate factual disputes on interlocutory appeal: "dismiss that portion of their appeal for lack of jurisdiction." *Id.*

As this Court can see from a review of the videotape in the record, nothing in the video remotely contradicts Harvell's claim that officers repeatedly punched him after he was fully restrained, much less

25

"blatantly" so. This Court accordingly "lacks the power to reassess [the] facts on interlocutory review." *George*, 736 F.3d at 836.

## II. A Reasonable Jury Could Conclude That Defendants' Conduct Violated the Eighth Amendment

A reasonable jury could easily conclude that Defendants' treatment of Harvell violated the Eighth Amendment.

### A. Legal Principles: Eighth Amendment

"[I]t is clearly established law that beating a handcuffed convict violates the Eighth Amendment." *Hughes*, 31 F.4th at 1223. This Court has repeatedly held that summary judgment is inappropriate where a plaintiff alleges that he was beaten while already restrained by handcuffs, leg restraints, or both. *See, e.g., id.* at 1222–23; *Manley*, 847 F.3d at 709, 711; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005).

More generally, the elements of an Eighth Amendment excessive force claim in the prison context are (1) an officer's "malicious[] and sadistic[] … intent to cause harm"; (2) force that is "excessive and unnecessary under all of the circumstances," and (3) that "the defendant's acts caused the plaintiff harm." *Hoard v. Hartman*, 904 F.3d 780, 788–89 & n.9 (9th Cir. 2018).

26

The first element—malicious and sadistic intent to cause harm—is a question of "subjective intent," *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 797 (9th Cir. 2018), but—despite the "malicious[] and sadistic[]" terminology, which "serves a predominantly rhetorical function"—does not require "proof of sadism or masochism" on the officer's part. *Hoard*, 904 F.3d at 789. Nor is any showing of officer "enjoyment" required. *Id.* Rather, the "intent to cause harm" element requires only that the officer act with the "intent to harm" the inmate, rather than the intent to further "a good-faith effort to maintain security." *Id.* at 788–89.

Once the first element (intent to cause harm) is met, so is the second (excessive force): "once a jury has determined on the basis of sufficient evidence that 'prison officials maliciously and sadistically used more than *de minimis* force to cause harm, contemporary standards of decency,' and thus the Eighth Amendment, '*always* are violated.'" *Rodriguez*, 891 F.3d at 797 (emphasis added, citation and brackets omitted).

As to the third element—harm to the plaintiff—a plaintiff need not have suffered any particular form or degree of injury to state an

27

Eighth Amendment claim; even minimal injury is sufficient. *See Wilkins v. Gaddy*, 559 U.S. 34, 38–40 (2010). "[T]he nature of the force," not "the extent of the injury," is what matters for Eighth Amendment purposes. *Id.* at 39. Although the injury a plaintiff suffers may be relevant evidence of the force an officer used, "[i]njury and force" are "only imperfectly correlated," and "it is the latter that ultimately counts." *Id.* at 38.

### B. A Reasonable Jury Could Easily Conclude that Harvell's Beating Violated the Eighth Amendment

#### 1. First Element: Intent to Cause Harm

Taking the facts in the light most favorable to Harvell, a reasonable jury could conclude that Officers Rigney and Brown were motivated by an intent to harm Harvell, not a good-faith motivation to maintain or restore order.

"[Q]uestions involving a person's state of mind … are generally factual issues inappropriate for resolution by summary judgment." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1302 (9th Cir. 1999) (ellipses in original and citation omitted). That is because determining an actor's motive generally requires drawing inferences

28

from circumstantial evidence: a classic question for the finder of fact. *See id.*

That is certainly true here. A reasonable jury could infer that repeatedly punching Harvell, a defenseless inmate whose arms and legs were already fully shackled, was force "applied for no good faith law enforcement purpose," *Rodriguez*, 891 F.3d at 797, and was instead force applied with the intent to injure Harvell—whether as punishment for the earlier noncompliance Defendants repeatedly claim Harvell engaged in (AOB 4–7, 11, 12, 20), because Defendants were "frustrated," *Watts*, 394 F.3d at 711, by the need to participate in the cell extraction, or even just "dispassionately," for no good reason at all. *Hoard*, 904 F.3d at 782. If the jury credits Harvell's version of events, then there was no legitimate order-restoring purpose for what the officers did—since order had already been restored (or maintained), by dint of Harvell's shackling, at the time officers repeatedly punched him.

"If Plaintiff was restrained and compliant, a reasonable jury could find that the use of force described by Defendants was malicious and sadistic, and not a good-faith effort to maintain or restore discipline." *Lees v. Mariscal*, No. 19-CV-01603-HSG, 2022 WL 4591794, at *5 (N.D.

29

Cal. Sept. 29, 2022). It follows that "[w]hether Defendants' use of force violated the Eighth Amendment turns on whether the Court finds Plaintiff's version of events more credible or find Defendants' version of events more credible," *id.*—a question that can only be resolved at trial.

Defendants argue that "Harvell offered no evidence establishing that any Defendant had a sadistic or malicious purpose for the force applied," AOB 33, but this Court has no jurisdiction to question whether Harvell presented sufficient evidence that Rigney and Brown were subjectively motivated by an intent to harm him, not to restore or maintain order. *See Est. of Anderson*, 985 F.3d at 731 n.3 (claims that a plaintiff has presented insufficient evidence are unreviewable on interlocutory appeal). Nor do Defendants challenge the admissibility of Harvell's sworn complaint, which supplies the key evidence here. Defendants' citation (AOB 33) to *Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001) is therefore inapposite: as this Court has explained, *Jeffers* applies where there is "*no evidence* of bad motive," even when the record is "viewed in the light most favorable to the plaintiffs." *Est. of Anderson*, 985 F.3d at 731 n.3 (emphasis in original). There is such evidence here: Harvell's sworn complaint, which alleges repeated

30

punches that a reasonable jury could infer were motivated by an intent to harm Harvell, not restore order.

## 2. Second Element: Excessive Force

It follows automatically that a reasonable jury could find true the second element of Harvell's Eighth Amendment claim: that the force used here was excessive. "[O]nce a jury has determined on the basis of sufficient evidence that 'prison officials maliciously and sadistically used more than *de minimis* force to cause harm, contemporary standards of decency,' and thus the Eighth Amendment, '*always* are violated.'" *Rodriguez*, 891 F.3d at 797 (emphasis added, citation and brackets omitted). That is because there is *no* level of non-*de minimis* force acceptable to use for the purpose of injuring an inmate, rather than restoring or maintaining order: "More than *de minimis* force applied for no good faith law enforcement purpose violates the Eighth Amendment." *Id.*

In any event, a reasonable jury could find that the force used here was excessive even if some further showing beyond subjective bad intent were required (which it is not). Even in the Fourth Amendment excessive-force context—where, unlike in this case, it does not follow

31

automatically from a finding of subjective bad intent that the officers' use of force was unconstitutional, *see Rodriguez*, 891 F.3d at 797—this Court has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury. " *Liston*, 120 F.3d at 976 n.10. This Court has also explained that "[b]ecause the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012).

That holding applies in full force here, because the Eighth Amendment, like the Fourth, requires an inquiry into the same types of complex, fact-bound questions. Generally, when determining whether a use of force by prison officials violates the Eighth Amendment, courts look to "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat 'reasonably perceived by the responsible officials,' and [4] 'any efforts made to temper the severity of a forceful response.'" *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Where, as in this case, officers repeatedly punch a

32

fully restrained, non-resisting inmate, there is [1] no need for force, [2] no relationship to any need for force, [3] no threat to officers, and [4] no effort to temper the force. Any force is therefore "gratuitous[]" and could not "plausibly have been thought necessary" under the circumstances. *Wilkins*, 559 U.S. at 37–38 (citation omitted). At minimum, a jury could weigh those fact-bound factors and reasonably so find.

### 3. Third Element: Injury

Finally, Defendants conceded below that "Harvell's injuries exceed a *de minimis* injury," ER 187,[9] and there is no question that a reasonable jury could find that Rigney's and Brown's punches caused Harvell "harm"—the third and final element of an Eighth Amendment excessive force claim. *Hoard*, 904 F.3d at 788 n.9; *see* ER 8, 278 (sealed), 280 (sealed) (listing Harvell's injuries).

---

[9] In any event, the Supreme Court has rejected the argument that plaintiffs must show more than a "de minimis" *injury* (as opposed to more than a de minimis *use of force*) to state an Eighth Amendment claim. *See Wilkins*, 559 U.S. at 38–39.

33

## III. It Was Clearly Established At The Time Harvell Was Assaulted that Defendants' Conduct Violated the Eighth Amendment

Harvell's right not to be assaulted while fully restrained was clearly established in this Circuit at the time the incident occurred.

### A. Legal Principles: Clearly Established Rights

A constitutional right is "clearly established," and precludes the assertion of qualified immunity, in two circumstances.

First, a right is clearly established if existing precedent—from this Court or the Supreme Court, see *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021)—had already held, at the time the plaintiff was injured, that materially similar conduct by officers in a prior case was unconstitutional. "[T]he plaintiff does not need to find a 'case directly on point,'" but "must identify a binding precedent that is not 'materially distinguishable' and that can be said to 'govern the facts of [his] case.'" *Spencer v. Pew*, 117 F.4th 1130, 1138 (9th Cir. 2024) (citations omitted). Although a court "need not identify a prior *identical* action to conclude that the right is clearly established," *Ioane v. Hodges*, 939 F.3d 945, 956 (9th Cir. 2018) (emphasis added), the plaintiff must point to a precedent that is "materially similar in the relevant respects." *Spencer*, 117 F.4th at 1143.

34

Second, in "an obvious case," general constitutional standards can "'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (citation omitted). In these cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *United States v. Lanier*, 520 U.S. 259, 271 (1997). For example, "where [an] Eighth Amendment violation" is "obvious," there "need not be a materially similar case for the right to be clearly established." *Brosseau*, 543 U.S. at 199 (quoting and citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Under those circumstances, locating a prior case with "materially similar" facts is "not necessary" to show that a right is "clearly established." *Hope*, 536 U.S. at 741; *see Spencer*, 117 F.4th at 1138, 1143 (similar).

In this case, Harvell's right not to be assaulted was clearly established under either standard, and this Court may affirm for either reason. *See Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) ("We may affirm a district court's judgment on any ground

35

supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt.").

### B. This Court's Precedent Clearly Establishes That Rigney's and Brown's Conduct Was Unlawful

First, Rigney's and Brown's conduct was forbidden, at the time it occurred, by materially similar, binding precedent from this Court.

The events of this case occurred in June 2022. ER 6, 151, 228. This Court had already held in 2017, on materially indistinguishable facts, that summary judgment is inappropriate on an Eighth Amendment claim where there is a genuine dispute of material fact as to whether correctional officers beat an inmate restrained by both arm and leg restraints. *See Manley*, 847 F.3d at 709, 711. This Court again emphasized in April 2022, again prior to the events of this case, that "it is clearly established law that beating a handcuffed convict violates the Eighth Amendment." *Hughes*, 31 F.4th at 1223.[10] The circumstances in *Hughes* are likewise materially identical to the circumstances here—

---

[10] A decision in this Circuit clearly establishes the law—at the latest—at the time the decision is filed. *See Ballentine v. Tucker*, 28 F.4th 54, 66 (9th Cir. 2022) (decision filed in November 2006 clearly established the law as of November 2006). For *Hughes*, that date is April 21, 2022.

and in fact, the circumstances here establish an even clearer violation of the Eighth Amendment.

Because both *Manley* and *Hughes* are "materially similar in the relevant respects" to this case, *Spencer*, 117 F.4th at 1143, the officers' actions in this case were prohibited by clearly established law, and they are not entitled to qualified immunity.

### 1. The Facts in *Manley* are Materially Similar to the Facts in This Case

First, the facts in this Court's decision in *Manley* are materially identical to the facts in this case. Although there is one factual difference, that factual difference is immaterial.

In *Manley*—another Nevada case out of Ely State Prison, the same prison at issue here—plaintiff Manley was (as here) extracted from his cell, and (as here) "officers video-recorded the extraction." *Manley*, 847 F.3d at 709. Manley (like Harvell) alleged that, during an interval when he was not visible on video, officers physically attacked him "while he was restrained in handcuffs and leg irons." *Id.* As here, Manley's medical records later "reflect[ed] various injuries and physical complaints," although in Manley's case "they [did] not indicate the cause of his ailments." *Id.*

37

The district court granted summary judgment to the defendant correctional officers on Manley's Eighth Amendment excessive-force claim, but this Court reversed. *Manley*, 847 F.3d at 711. This Court explained that there were "multiple issues of disputed material fact regarding Manley's excessive force claim" that precluded summary judgment, including whether Manley "was beaten by corrections officers" during the window of time when he was not visible on camera. *Id.*[11]

The single difference between the beating in *Manley* and the beating in this case is immaterial. In *Manley*, as in this case, the plaintiff alleged that officers "punched" him while he was fully restrained. 847 F.3d at 709. In *Manley*, the plaintiff alleged that before lifting him, officers also "kicked" and "stomped" him while he was fully restrained. *Id.* But that difference is legally immaterial, because this Court has held that "once a jury has determined on the basis of

---

[11] The Court also rejected Defendants' attempt to argue that Manley's ingestion of methamphetamine rendered his testimony not credible, remarking that this was "the sort of credibility finding properly left for a jury." 847 F.3d at 711. No such argument is even presented here, and if it were, it would fail for the same reason.

sufficient evidence that 'prison officials maliciously and sadistically used *more than de minimis force* to cause harm, contemporary standards of decency,' and thus the Eighth Amendment, '*always are violated.*'" *Rodriguez*, 891 F.3d at 797 (emphasis added, citation and brackets omitted). For that reason, the punches in this case—if a jury agreed they occurred—violated the Eighth Amendment just as surely as the punches, kicks, and stomps in *Manley* did. This Court "need not identify a prior *identical* action to conclude that the right is clearly established," *Ioane*, 939 F.3d at 956 (emphasis added), and the plaintiff must point only to a precedent that is "materially similar in the relevant respects." *Spencer*, 117 F.4th at 1143. *Manley* is exactly that kind of materially similar precedent.

> **2.    The Facts in *Hughes* are Materially Similar to the Facts in This Case**

This Court's decision in *Hughes*, 31 F.4th 1211, is likewise materially indistinguishable from this case—except the facts in this case establish an even *clearer* violation of the Eighth Amendment.

In *Hughes*, officers were dealing with a much more dangerous situation than the one here: namely, seeking to recapture a dangerous offender named Corey Hughes, who had "escaped from a San Joaquin

County Jail highway work crew and lived on the lam for three weeks." 31 F.4th at 1215. Hughes (1) "had prior convictions for possession of a stolen vehicle, weapons possession, and evading a peace officer with disregard for safety," (2) was "affiliated with a violent street gang," (3) had "training in mixed martial arts," and (4) "was possibly under the influence of methamphetamine." *Id.* at 1216. The officers "did not know whether Hughes was armed and, given his prior convictions for weapons possession, had reason to suspect that he was." *Id.* at 1222. "These facts led Agent Chris Rodriguez to conclude that Hughes posed a danger to the public and the arresting team," requiring highly trained officers from several agencies to "participate in the extraction of Hughes from the home" where he was reported to be hiding. *Id.* at 1216.

From there, the cases' facts are not only "materially similar in the relevant respects," *Spencer*, 117 F.4th at 1143; they are materially *identical*. There are seven similarities between *Hughes* and this case. And while there are two factual differences, even Defendants do not argue that one of them is material, and the other clearly is not.

A close comparison of the facts demonstrates the point.

40

**1.     In both cases, video footage showed officers gathering outside the plaintiff's location.**  In *Hughes*, officers first "gathered by the front door" of the home where Hughes was hiding, and "[b]odycam footage" from the officers "show[ed] the law enforcement team assembled just outside the home's open front door."  *Hughes*, 31 F.4th at 1216–17.

In this case, officers similarly gathered by the door of Harvell's cell, and video footage showed the team of officers assembled just outside the cell door.  VR 01:10–02:40.

**2.     In both cases, officers yelled for the plaintiff to submit to restraints, but the plaintiff allegedly refused.**  In *Hughes*, officers yelled from outside the door for Hughes to come out from inside the house, but he instead remained inside.  31 F.4th at 1216–17.

In this case, Defendants claim they yelled at Harvell from outside the door to submit to restraints, but he instead "remained standing by the window in the cell door."  AOB 5.

**3.     In both cases, officers claim they struggled with the plaintiff before restraining him.**  In *Hughes*, after finally confronting Hughes, "[t]he officers engaged in a physical struggle with

41

Hughes," and one of the officers "testified that his bodycam was kicked off of his chest" during the struggle. 31 F.4th at 1217.

Here, there was far less justification for officers to use force against Harvell: even Defendants do not claim that Harvell engaged in any violence against officers. But Defendants do similarly claim that Harvell was, like Hughes, initially not fully compliant with officers' demands: Defendants argue that Harvell sat on his own ankles to initially prevent application of his leg restraints, and ran away from officers toward the back of his cell (although none of this appears on the videotape). *See* AOB 4–7, 12, 20, 24, 26, 27, 28, 30, 31; *infra* Section V.

**4.      In both cases, the plaintiff was eventually handcuffed.** In *Hughes*, officers eventually "handcuffed" Hughes after the initial physical struggle. 31 F.4th at 1217.

Here, Harvell was even more comprehensively restrained. The video footage unmistakably shows both of Harvell's hands being handcuffed even before officers entered his cell, VR 02:45, and Defendants concede that they were "able to restrain both wrists" before they entered Harvell's cell. AOB 5. Defendants also concede that they restrained both of Harvell's legs after they entered his cell. AOB 7.

42

5.      **In both cases, video footage did not clearly show whether the plaintiff was punched before or after being restrained.**  In *Hughes*, although there was video footage of the extraction of Hughes from the house, "the footage does not clearly and unmistakably depict whether punches were thrown before or after Hughes was handcuffed."  31 F.4th at 1217.

Here, although there is likewise video footage of the extraction of Harvell from his cell, the footage likewise does not clearly and unmistakably depict whether Rigney and Brown threw punches before or after Harvell's arms and legs were restrained.  *See* VR 3:00–4:30.

6.      **In both cases, officers allegedly punched the fully restrained plaintiff during a short window of time.**  In *Hughes*, "no more than a single minute elapse[d]" from the time the confrontation began to the time Hughes was taken into custody.  31 F.4th at 1217.  There was therefore an even shorter period of time—something less than "a single minute," *id.*—during which officers allegedly threw the post-handcuffing punches at issue in *Hughes*.

Here, Defendants concede that 90 seconds—a slightly longer period of time than the overall confrontation period in *Hughes*—elapsed

43

between when officers first entered Harvell's cell and when they carried him out. AOB 7. And Defendants concede that there were at least 40 seconds between when officers fully restrained Harvell and when they carried him out of the cell, AOB 7—a post-restraint window of time during which Harvell alleges he was punched, ER 10, 230, and which is materially similar in duration to the less-than-a-minute post-restraint window of time during which officers allegedly punched Hughes. 31 F.4th at 1217.

The duration of the alleged post-handcuffing punches in *Hughes* was therefore materially similar to the duration of the alleged post-restraint punches in this case.

**7.  In both cases, plaintiff sustained injuries to his head and face.** In *Hughes*, Hughes sustained "minor abrasions to his head and face." 31 F.4th at 1217.

Here, Harvell also sustained abrasions to his head and face, although they were even more significant than the facial injuries in *Hughes*. As the district court found, Harvell suffered lacerations with swelling, bleeding on both sides of the face, and bruising around the bridge of his nose. ER 8, 278 (sealed), 280 (sealed).

44

### 3. The Differences Between *Hughes* and This Case Are Immaterial

There are two factual differences between *Hughes* and this case, but even Defendants do not argue that one of them is material, and the other plainly is not.

First, the officers in *Hughes*, in addition to punching Hughes, also sent in a dog named Cain, and Cain bit Hughes. 31 F.4th at 1217. But Defendants do not argue that this factual difference is material—despite the district court's reliance on *Hughes*, ER 10.[12] It is not: the Court in *Hughes* held that punching an already-handcuffed detainee, *standing alone*, violated clearly established law, with or without the involvement of the dog. *See* 31 F.4th at 1223–24. This Court held, without qualification, that "it is clearly established law that beating a handcuffed convict violates the Eighth Amendment." *Id.* at 1223. That

---

[12] Defendants *do* attempt to distinguish *Hughes* on the (incorrect) ground that "[t]he injuries sustained by Harvell" were purportedly "far less than those sustained in *Hughes*," AOB 20—but Defendants make no attempt to argue that *Hughes* is distinguishable on the ground that the use of a dog constitutes a qualitatively different type of post-handcuffing force.

45

conclusion made sense, because the Supreme Court case on which *Hughes* relied for that holding—*Hudson v. McMillian*, 503 U.S. 1 (1992)—had nothing to do with dogs. The *Hughes* court then independently held that the use of a dog on an already-handcuffed arrestee *also* violated clearly established law. *See Hughes*, 31 F.4th at 1223.

Because *Hughes*'s two qualified immunity holdings are each independent and sufficient, *Hughes* is not distinguishable on the ground that, in addition to prohibiting punching a handcuffed detainee, the case *also* prohibited other conduct (the use of a dog on a handcuffed detainee). That comports with the underlying "focus" in qualified immunity cases, which is "whether the officer had fair notice that her conduct was unlawful." *Brosseau*, 543 U.S. at 198. A reasonable officer reading *Hughes* would be on fair notice that the case prohibited repeatedly punching an already-handcuffed detainee, because that is what *Hughes* said on its face. *See* 31 F.4th at 1123 ("[I]t is clearly established law that beating a handcuffed convict violates the Eighth Amendment.").

46

Second, Defendants argue that "[t]he injuries sustained by Harvell were far less than those sustained in *Hughes*." AOB 20. That is not true, and in any event, it is irrelevant.

The injuries in *Hughes* were as follows: "Hughes sustained dog bites and bruising to his leg, and minor abrasions to his head and face." 31 F.4th at 1215. The *Hughes* court expressly concluded that "these injuries are relatively minor" and that the minor nature of Hughes's injuries "weigh[ed] slightly in favor of the defendant law enforcement officers" in the Eighth Amendment excessive-force analysis. *Id.* at 1221.

Here, Harvell's injuries were not minor. As the district court found, Harvell sustained lacerations with swelling and bleeding on both sides of his face, as well as bruising around the bridge of his nose. ER 8, 278 (sealed), 280 (sealed). Even if these injuries could be characterized as minor, that would not distinguish this case from *Hughes*, which itself involved minor injuries.

In any event, even if the injuries here *were* less significant than those in *Hughes* (which they are not), that would not matter: the degree of force used against the plaintiff, not the injury the plaintiff eventually

47

suffers, is what matters for purposes of comparing two cases in the qualified immunity context. *See Spencer*, 117 F.4th at 1144.

As this Court has explained, even when a past precedent involved "severe brain damage" to a plaintiff that was "much more grievous" than the injuries at issue in a later case, that difference in the gravity of the injury provides no basis for distinguishing the past precedent for qualified immunity purposes. *Spencer*, 117 F.4th at 1144 (emphasis added). The reason is that "qualified immunity analysis … is limited to 'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question." *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017). Because "[a]t the time that" an officer acts he cannot "know the exact extent of the injuries that might result from his unwarranted use" of force, differences in the extent of the Plaintiff's eventual injuries do not in themselves provide a "basis for materially distinguishing" earlier, otherwise materially similar cases. *Spencer*, 117 F.4th at 1144. As the Supreme Court has explained, it is "the nature of the force," not "the extent of the injury," that matters for an Eighth Amendment claim, and because "[i]njury and force" are "only imperfectly correlated … it is the latter that ultimately counts." *Wilkins*, 559 U.S. at 38–39.

48

Hence, even if the injuries to Harvell were less serious than the injuries to Hughes (which they are not), that provides no basis for distinguishing *Hughes*. What matters is the nature and quality of the officer's *action*, *see Spencer*, 117 F.4th at 1144; *Wilkins*, 559 U.S. at 38–39, and on that score, this case is even more egregious than *Hughes*: Harvell was repeatedly punched in the head while both his arms *and* legs were fully restrained. ER 10, 228, 230, 232.

### C.  This Is an "Obvious" Case in Which Officers' Actions Clearly Violated the Constitution Even Absent a Materially Similar Precedent

Even if this Court were to disagree that *Manley* and *Hughes* clearly establish the relevant constitutional law here, this is a case of "obvious clarity" where no materially similar precedent is needed to establish that Harvell's rights were violated. *Lanier*, 520 U.S. at 271.

It is obvious that repeatedly punching a fully restrained inmate violates the Eighth Amendment. The reason is that there is no justification for that conduct that could possibly satisfy the Eighth Amendment's requirements. The relevant Eighth Amendment question is "whether force was applied in a good-faith effort to maintain or restore discipline," which the Eighth Amendment may permit, or

"maliciously and sadistically to cause harm," which the Eighth Amendment does not permit. *Wilkins*, 559 U.S. at 37; *see Hoard*, 904 F.3d at 782, 787–89; *Rodriguez*, 891 F.3d at 797. Punching an inmate who is already fully restrained cannot possibly be part of an effort to "maintain or restore discipline," *Wilkins*, 559 U.S. at 37, since discipline has—by the time of the punching—already been restored. Punching or beating an inmate under those circumstances can, therefore, only be punitive or vengeful in nature—something the Eighth Amendment prohibits. *See* Section II, *supra*.

Where, as here, officers repeatedly punch a fully restrained, non-resisting inmate, none of the factors required to justify a use of force are met: there is [1] no need for force, [2] no relationship between the force used and the need for force, [3] no threat to officers, and [4] no effort to temper the force. *Cf. Hudson*, 503 U.S. at 7. Any force is therefore "gratuitous[]" and could not "plausibly have been thought necessary" under the circumstances. *Wilkins*, 559 U.S. at 37–38 (citation omitted); *see also Rodriguez*, 891 F.3d at 797; *Hoard*, 904 F.3d at 787–89.

50

### D. Defendants' Only Published Cases Are Factually Dissimilar Out-of-Circuit Authority

Defendants cite several out-of-circuit cases for the proposition that their actions were constitutional. AOB 21–22, 27–32. Whether used to defend Defendants' actions on the merits or to establish their entitlement to qualified immunity, the attempt fails. Defendants' cases are (1) out-of-circuit decisions irrelevant for qualified immunity purposes, and are (2) entirely dissimilar on their facts, making them unpersuasive for *any* purpose. Defendants' only cases from within this Circuit are unpublished and nonprecedential, and are, in any event, also factually dissimilar.

### 1. All of Defendants' Published Cases Are Out-of-Circuit and Therefore Irrelevant

To the extent Defendants cite out-of-circuit cases to support their claim to qualified immunity (AOB 21–22, 27–32), that attempt fails. This Court's decisions in *Manley* and *Hughes* are materially similar to this case (see Section III.B, *ante*) and, as published decisions of this Circuit, are binding precedent here.

That makes Defendants' out-of-circuit cases legally irrelevant. If a "right is clearly established by decisional authority of the Supreme Court or this Circuit," this Court's qualified immunity inquiry "should

51

come to an end." *Hopkins v. Bonvicino*, 573 F.3d 752, 772 (9th Cir. 2009) (citation omitted); *see Evans*, 997 F.3d at 1066 (same). "Only in the absence of binding precedent" does this Court "consider other sources of decisional law such as out-of-circuit cases" in the qualified immunity context. *Carrillo v. Cnty. of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015). Because there is binding Ninth Circuit precedent on point, Defendants' out-of-circuit cases are irrelevant. See *id.* (irrelevant for qualified immunity purposes that Third Circuit had reached a different conclusion because "at the time of the relevant events in these cases, circuit precedent clearly established" the law in the Ninth Circuit); *Chavez v. Wynar*, 421 F. Supp. 3d 891, 905 (N.D. Cal. 2019) (out-of-circuit case "is irrelevant to the availability of qualified immunity in the instant case" because Ninth Circuit precedent applied).

### 2. None of the Cases Defendants Cite Are Materially Similar

In any event, none of the out-of-circuit cases Defendants cite are factually similar to this one. They are therefore unpersuasive for any purpose.

Defendants (AOB 27–28) cite *Skinner v. Cunningham*, 430 F.3d 483 (1st Cir. 2005), but that case is inapplicable here for a

straightforward reason. In *Skinner*, although the case did involve officers extracting an inmate from his prison cell, "each of the extractions was videotaped, which makes this case unusual because *we can see what occurred*." *Id.* at 488 (emphasis added). The plaintiff claimed that officers had attacked him while he was being carried down the corridor *after* being pulled out of his cell, but as the First Circuit explained, "[w]e have viewed the video ourselves" and "[t]here is *no evidence in the video or elsewhere* that Dodge deliberately struck Skinner or that any of the other guards deliberately injured Skinner." *Id.* at 489 (emphasis added). *Skinner* therefore provides no guidance as to what a court should do where—as here—a video does *not* show what actually happened to the plaintiff during the critical moments of the cell extraction; where what happened to the plaintiff occurred *inside* a cell (out of view of the cameras) rather than *outside* the cell (in view of the cameras); and where there is evidence (here, Harvell's sworn complaint) that prison guards did deliberately injure him.

Defendants (AOB 31–32) next cite *Stenzel v. Ellis*, 916 F.2d 423 (8th Cir. 1990), but that case bears no relation to this one. The force at issue in *Stenzel* was force used in an attempt to make Stenzel leave his

53

cell, not force applied to Stenzel after he had already been subdued and handcuffed. *Id.* at 425. In fact, the Eighth Circuit explicitly observed, "[a]t no time during this part of the incident was Stenzel handcuffed." *Id.* Stenzel was later handcuffed after officers forced him to leave his cell, but "Stenzel ma[de] no claim of being beaten during the handcuffing incident." *Id.* There was simply no claim in *Stenzel* similar to Harvell's claim in this case: *i.e.*, that after an inmate had been fully subdued and restrained, officers repeatedly punched him in the head.

Finally, Defendants' citation (AOB 21–22) to *Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984) is entirely inapposite. That case was a class action about the use of chemical agents, *id* at 1261, and it did not involve the beating of an inmate who had already been handcuffed. Defendants appear to be relying (AOB 21) on the opinion's statements regarding a witness named McAdoo, but McAdoo was not punched while handcuffed; what McAdoo complained about was that he was maced *before* he was handcuffed, when he refused to leave his cell. *Soto*, 744 F.2d at 1266. That fact pattern has no bearing on this case. In any event, the Seventh Circuit's holding in *Soto* does not help Defendants. The court held that "it is a violation of the Eighth

54

Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain," although it may be permissible "when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Id.* at 1270. The opinion does not endorse in any way the use of force against already-restrained, compliant prisoners.

### 3. Defendants' Ninth Circuit Cases Are All Unpublished and Factually Dissimilar

Defendants' citations to a bevy of unpublished (and factually dissimilar) Ninth Circuit memorandum dispositions (AOB 22–24) do not help them either.

First, with exceptions not relevant here, "[u]npublished dispositions and orders of this Court are not precedent." Ninth Circuit Rule 36-3(a). Unpublished memoranda are therefore, like Defendants' out-of-circuit cases, non-binding—and irrelevant to the qualified immunity inquiry in light of *Manley* and *Hughes*. *See* Section III.D.1, *ante*.

Second, and in any event, none of the unpublished decisions Defendants cite are factually similar to this case. All four memoranda

cited by Defendants[13] involved a use of pepper spray or other chemical agents to try to force an inmate to come out of his cell. None of these cases had anything to do with punching an already-restrained detainee.[14] *Cf.* AOB 22–24.

## IV. Officer Pickens Is Not Entitled to Qualified Immunity

Defendants briefly argue (AOB 34–37) that Officer Pickens, who participated in the cell extraction, cannot be held liable for failure to intervene. That is also wrong. The reason is that, construing the facts in the light most favorable to Harvell, Officer Pickens helped to shackle Harvell in his cell, actively participated in the cell extraction with Officers Rigney and Brown, and did nothing at all to intervene while Officers Rigney and Brown repeatedly punched Harvell in the head.

---

[13] *Howard v. Nunley*, 465 F. App'x 669, 670 (9th Cir. 2012), *Rodriguez v. Elmore*, 407 F. App'x 124, 125–126 (9th Cir. 2010), *Allen v. Bosley*, 253 F. App'x 658, 659 (9th Cir. 2007), and *Eccleston v. Oregon ex rel. Oregon Dep't of Corr.*, 168 F. App'x 760, 761 (9th Cir. 2006).

[14] Defendants' citation to *Eccleston* (AOB 23–24) is improper for the additional reason that it is an unpublished disposition of this Court issued before January 1, 2007. *See* Ninth Circuit Rule 36-3(c) ("Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit" except in circumstances not relevant here).

### A. Legal Principles: Duty to Intervene

It is "clearly established that 'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" *Tobias v. Arteaga*, 996 F.3d 571, 583 (9th Cir. 2021) (citation omitted). As relevant here, "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). "If an officer fails to intercede, 'the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who' performed the offending action." *Tobias*, 996 F.3d at 584 (citation omitted).

An officer may be held liable for failure to intercede where "they had an opportunity to intercede," *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), were "more than a mere bystander," *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (citation omitted), and "*kn[ew] about and acquiesce[d] in* the constitutionally defective conduct as part of a common plan with those whose conduct constitute[d] the violation." *Id.* (emphasis added).

57

## B. Officer Pickens Failed to Intervene to Stop a Clear Constitutional Violation

Under these standards, the district court correctly held that, construing all facts in Harvell's favor, Officer Pickens may be held liable for failure to intervene and was not entitled to summary judgment. ER 13–14.

This Court's decision in *Robins*—another case out of Ely State Prison—is instructive. There, one Nevada correctional officer (Meecham) fired a shotgun; the plaintiff inmate (Robins) was injured; and Robins sued Meecham and two other officers (Morris and Cox), the latter two for failure to intervene. *Robins*, 60 F.3d at 1438, 1442. In affirming the denial of summary judgment to Morris and Cox, this Court observed that [1] neither officer "state[d] they did not have the opportunity to intervene to prevent Officer Meecham from firing the gun"; [2] "all three officers were together" in the same physical space; [3] "[t]he officers failed to carry their burden of showing that Officers Morris and Cox could not have prevented Officer Meecham from firing the shotgun"; and [4] the two passive officers failed to show that they "disagreed with Officer Meecham's actions." *Id.* at 1442. This Court therefore held that "the district court did not err in denying the motion

58

for summary judgment as to" Morris and Cox, the two officers sued for failure to intervene. *Id.*

The same analysis governs here. By her own admission, Officer Pickens was inside Harvell's cell during the extractions, actively participating in the extraction by (among other things) helping to shackle and restrain Harvell. ER 153–54. Accordingly, as in *Robins*, "all three officers were together" in the same physical space, 60 F.3d at 1442, when Rigney and Brown repeatedly punched Harvell. As in *Robins*, Pickens has not carried her "burden of showing" that she "could not have prevented" Rigney and Brown from punching Harvell during that time. *Id.* Nor have Defendants suggested that Pickens "disagreed with" Rigney's and Brown's alleged actions. *Id.* Finally, construing the facts in the light most favorable to Harvell, Pickens did nothing at all to intervene while the inmate she herself had helped to shackle was repeatedly punched in the head by two of her fellow officers for at least 40 seconds. It is therefore "plausible" that Pickens both "watched" the unconstitutional act and was "aware of [the] violation … as it occurred," *Tobias*, 996 F.3d at 584—or, put differently, that Pickens "kn[ew] about and acquiesce[d] in the constitutionally defective conduct" as part of a

59

"common plan," *Peck*, 51 F.4th at 889. That does not satisfy an officer's "duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Tobias*, 996 F.3d at 584.

Defendants' lone counterargument is to quibble with the facts: they argue that a reasonable jury could not possibly conclude, on the facts before the district court, "that Officer Pickens [1] knew that Harvell faced a risk of excessive force and [2] could have done something to prevent it." AOB 36. But what Pickens subjectively knew and what Pickens could have done are both factual disputes—and the district court's conclusion that "genuine disputes exist" about Pickens' factual participation, ER 14, is unreviewable here. *See George*, 736 F.3d at 834; *Isayeva*, 872 F.3d at 945; *Ames*, 846 F.3d at 347.

Defendants offer a series of related factual complaints, but none is persuasive, even if this Court had jurisdiction to review them. Defendants complain that it is "speculat[ive]" to think that "Officer Pickens knew that Harvell was going to be punched. " AOB 36. But Harvell's claim does not depend on the argument that Pickens knew *ahead of time* that Harvell would be punched later; it is a claim that, once the punching began, Pickens "watched" the unconstitutional act

60

and was "aware of [the] violation … as it occurred," thereby failing to meet her "duty to intercede when [her] fellow officers violate the constitutional rights of a suspect or other citizen." *Tobias*, 996 F.3d at 584.

Defendants next complain that to prevent Rigney's and Brown's conduct, Pickens might have had to "abandon[] her duty to restrain Harvel [*sic*], thus placing other officers in danger." AOB 36. What Pickens could or might have done is again an unreviewable factual question for the jury, but in any event, Defendants' speculation that Pickens might have had to temporarily pause her attempt to restrain Harvell makes little sense to begin with: Harvell's claim is that he was punched *after* he was already fully restrained, not before. ER 10, 228, 230, 232. Much the same is true of Defendants' claim that Pickens might not have "been able to prevent the alleged punch" or to take action in the window of time while "these punches supposedly occurred." AOB 36. Again, what Pickens could have done to prevent the punches is a factual question unreviewable here, and on which reasonable jurors could disagree.

61

Because a reasonable jury could conclude that Pickens actively participated in the cell extraction, had the opportunity to intervene to stop Rigney and Brown from repeatedly punching Harvell, and did nothing to stop them, the district court properly denied summary judgment to Officer Pickens.

## V. Defendants' Remaining Factual Arguments Are Irrelevant

Defendants next discuss a series of further factual disputes, but those remaining disputes are all legally irrelevant. To the extent these disputes are relevant at all, they affirmatively support *Harvell*'s side of the story, not Defendants'.

### A. What Happened Before Harvell Was Restrained is Legally Irrelevant

Defendants first argue at length that Harvell failed to follow various instructions before officers restrained him, such as not turning around to face the back of his cell, pulling one of his wrists back into his cell, sitting on his ankles rather than kneeling, and running away from officers. AOB 4–7, 12, 20, 24, 26, 27, 28, 30, 31. Again, nothing on the videotape of the incident shows any of this. But even accepting these claims to be true, they are not exculpatory of Defendants.

62

Beating a handcuffed convict violates the Eighth Amendment even if the convict was uncooperative before being restrained. That was the case in *Hughes*, where officers first engaged in a physical struggle with Hughes and then (according to Hughes) punched him after he was handcuffed. *See* 31 F.4th at 1223. It was also true in *Spencer*, where this Court denied an officer qualified immunity because applicable precedent was "materially similar in the relevant respects post-handcuffing" to Spencer's case, even though "the two cases present very different facts prior to the handcuffing of the detainee." 117 F.4th at 1143. It is well-established that this Court evaluates claims of unconstitutional excessive force on an act-by-act basis and will deny summary judgment where a later act was excessive, even if an earlier one was not. *See Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790, 800 (9th Cir. 2025) (en banc) (evaluating several volleys of shots on a volley-by-volley basis and denying summary judgment because "a reasonable jury could find that after the second volley, the immediate threat posed by Hernandez had ended"). It is therefore irrelevant whether Harvell failed to follow instructions

63

before he was fully restrained; the salient legal question is whether he was beaten *after* he was restrained.

To the extent any of Harvell's purported pre-restraint failures to follow instructions are relevant, they affirmatively support Harvell's side of the story, not Defendants'. If Defendants are right that Harvell caused difficulty for officers before Harvell was eventually restrained, that supports a reasonable inference that when Rigney and Brown later repeatedly punched Harvell after he was restrained, they were motivated by frustration with Harvell's earlier (purported) obstructionism—exactly what the Eighth Amendment does not permit. *See supra* Section II.B.

## B. Defendants' Argument About Harvell's Injuries is Irrelevant

Defendants claim that Harvell's head was not in fact "split open," but was merely "bruis[ed]" and "bleeding." AOB 11. It is unclear what Defendants think the distinction is, and a reasonable jury could conclude there isn't one. Even assuming there is a distinction, it is one "without a difference." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). There is no minimum-injury requirement for an Eighth Amendment claim, *see Wilkins*, 559 U.S. at 39, so it would not matter to the merits

64

of Harvell's Eighth Amendment claim even if Harvell's head were merely bruised and bleeding, rather than "split open"; a reasonable jury could conclude that the force in this case was excessive in either event. *See supra* Section II.B.  As to qualified immunity, the degree of force used against the Plaintiff, not the injury the Plaintiff eventually suffers, is what matters, *see Spencer*, 117 F.4th at 1144; *supra* Sections III.A, III.B.3, so Defendants' claim that Harvell's head was not "split open" is irrelevant to the qualified immunity inquiry too.

## VI.   Defendants' Administrative Deference Argument Is Both Forfeited and Meritless

Defendants appear to argue that this Court must defer to factual findings by the Nevada Department of Corrections about the incident in Harvell's cell.  AOB 40–44.  That argument is forfeited and meritless in any event.

First, this argument was not raised in Defendants' motion for summary judgment below (ER 180–96) and is therefore forfeited. *Squaw Valley Dev. Co.*, 395 F.3d at 1064.

Second, the argument is irrelevant in this interlocutory appeal. This Court has no jurisdiction—*whatever* the standard of deference applicable to a factual dispute—to review factual disputes in this

65

interlocutory appeal.  *See Isayeva*, 872 F.3d at 945; *Ames*, 846 F.3d at 347; *George*, 736 F.3d at 834, 835 & n.9.

Third, and on the merits, Defendants (AOB 40–44) cite *no* authority holding that a federal court hearing a constitutional suit under section 1983 must grant any deference to factual findings by the state entity being sued for constitutional violations.  The law is to the contrary and has been repeated in countless cases.  At summary judgment in an Eighth Amendment case in the prison context, "[i]f, as to any given material fact, evidence produced by the moving party … conflicts with evidence produced by the nonmoving party … we must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact."  *Manley*, 847 F.3d at 710 (ellipses in original); *see Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  That remains true where the inmate previously "challenged the results of the disciplinary proceeding through the prison grievance process" and that challenge was denied by the prison with factual findings made.  *Manley*, 847 F.3d at 709.

Fourth and finally, it would not matter even if the Court did accept the purported NDOC factual findings to which Defendants point:

66

*i.e.*, that Harvell purportedly "refused orders to submit to restraints" and that officers then used the minimum amount of force needed to get Harvell "into restraints." AOB 43. Those factual findings are irrelevant because, as outlined above, Harvell's claim is not based on anything that happened *before* Harvell was restrained; it is based on what officers did to him *after* he was restrained. *See* ER 10, 228, 230, 232. To the extent that Defendants claim that whether beating Harvell was "reasonable" is a question of fact to which NDOC is entitled to deference, AOB 43, Defendants cite no authority for that argument, which is again wrong: the reasonableness of force is a question for the jury and cannot ordinarily be resolved at summary judgment. *Liston*, 120 F.3d at 977.

## VII. Defendants Do Not Argue that Harvell Failed to Exhaust Administrative Remedies

Finally, although Defendants' opening brief briefly references the concept of "exhaustion," AOB 40, it does not argue that Harvell failed to exhaust his administrative remedies before filing suit. Nor is it remotely clear upon what facts such a contention could be based, even if Defendants had made it. "Arguments 'not raised clearly and distinctly in the opening brief' are waived." *Avila*, 758 F.3d at 1101 (citation

67

omitted). Nor did Defendants raise an exhaustion argument before the district court. ER 180–96. Any such argument is forfeited. *Squaw Valley Dev. Co.*, 395 F.3d at 1064.[15]

## CONCLUSION

The appeal should be dismissed to the extent it challenges the district court's conclusion that genuine disputes of material fact exist for trial, and denied in all other respects. The district court's denial of Defendants' motion for summary judgment should be affirmed and the cause remanded for trial.

---

[15] "PLRA exhaustion is a standard affirmative defense" and is "not jurisdictional." *Perttu v. Richards*, 605 U.S. 460, 469 (2025) (citation omitted).

Dated:  November 17, 2025          Respectfully submitted,

_/s/ Miles W. Unterreiner_

Miles W. Unterreiner (California Bar
No. 347959)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
miles.unterreiner@mto.com
Telephone: (415) 512-4000

69

**CERTIFICATE OF COMPLIANCE**

I am the attorney for Plaintiff-Appellee Sean Harvell in this matter, with Ninth Circuit case number 25-719.

**This brief contains 13,266 words,** excluding the items exempted by Federal Rule of Appellate Procedure 32(f). The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;

A1

[ ] a party or parties are filing a single brief in response to multiple briefs; or

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated

_____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Miles W. Unterreiner* **Date:** November 17, 2025

A2

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, a staff member at my firm, acting at my direction, filed the foregoing document with the United States Court of Appeals for the Ninth Circuit by using the ACMS system. I certify that all parties or their counsel of record are registered as ACMS Filers and that they will be served by the ACMS system.

DATED: November 17, 2025      */s/ Miles W. Unterreiner*

                                       Miles W. Unterreiner

                                       *Counsel for Plaintiff-Appellee*
                                       *Sean Harvell*

A3