**25-719**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

SEAN HARVELL,
Plaintiff-Appellee,

v.

CHET RIGNEY, et al.,
Defendants-Appellants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:23-cv-00101-CSD

---

# DEFENDANTS - APPELLANTS' REPLY BRIEF

---

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Shane Brown, Madeline Pickens,*
*and Chet Rigney*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iv

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. This Court Has Jurisdiction Over this Appeal of the District Court's Improper Denial of Defendants' Motion for Summary Judgment Asserting Qualified Immunity .......... 2

B. Defendants Are Entitled to Qualified Immunity Because Harvell Failed to Establish a Violation of a Clearly Established Law, Beyond Debate .......... 10

C. Defendants Did *NOT* Use Excessive Force Against Harvell in Violation of the Eighth Amendment .......... 11

1. Defendants' Use of Force Was Necessary and *NOT* Excessive .......... 12

2. Harvell Failed to Allege Facts Establishing a Sadistic or Malicious Purpose for the Force Applied .......... 25

3. Harvell Failed to Allege Facts Establishing the Force Personally Employed by Officer Pickens Was Excessive .......... 28

D. Harvell Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law .......... 31

E. This Court Must Accept as True NDOC Factual Findings Supported by Substantial Evidence .......... 35

III. CONCLUSION .......... 39

STATEMENT OF RELATED CASES .......... 41

CERTIFICATE OF COMPLIANCE .......... 41

CERTIFICATE OF SERVICE .......... 42

# TABLE OF AUTHORITIES

## CASES

*Allen v. Bosley*, 253 Fed. Appx. 658, 2007 WL 3244002 (9th Cir. 2007) .......... 16, 18, 21

*Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68 (9th Cir. 2022) .......... 38

*Ames v. King Cnty., Washington*, 846 F.3d 340 (9th Cir. 2017) .......... 4

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) .......... 13

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .......... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 28

*Ashker v. Newsom*, 81 F.4th 863 (9th Cir. 2023) .......... 36

*Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994) .......... 36

*Bartley v. Kim's Enter. of Orlando, Inc.*, Case No. 13–13507, 568 Fed. Appx. 827 (11th Cir. 2014) .......... 38

*Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) .......... 11, 25

*Behrens v. Pelletier,* 516 U.S. 299 (1996) .......... 2, 3

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024) .......... 9, 31, 34

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) .......... 38

*Clement v. Gomez*, 298 F.3d 898 (9th Cir. 2002) .......... 14

*Cockrell v. Sparks*, 510 F.3d 1307 (11th Cir. 2007) .......... 25

*Cunningham v. City of Wenatchee*, 345 F.3d 802 (9th Cir. 2003) .......... 9

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) .......................... 31

*Eccleston v. Oregon ex rel. Oregon Dept. of Corr.*, 168 Fed. Appx. 760, 2006 WL 390228 (9th Cir. 2006) .......................................... 16, 18

*Estate of Anderson v. Marsh*, 985 F.3d 726 (9th Cir. 2021) .................... 7

*Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002) ....... 8, 9

*Estate of Silva by & through Allen v. Murrow*, Case No 23-55559, 2025 WL 1218454 (9th Cir. Apr. 28, 2025) ......................................... 4

*Farmer v. Brennan*, 511 U.S. 825 (1994) ............................................... 28

*Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018) .......................... 7, 8

*Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013) ............................... 25

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) ....................................... 4

*Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) ................. 3, 4

*Howard v. Fye,* Case No. 24-146, 2025 WL 275118, (9th Cir. Jan. 23, 2025) ..................................................................................... 5, 6, 7

*Howard v. Nunley*, 465 Fed. Appx. 669, 2012 WL 35396 (9th Cir. 2012) ............................................................................................ 16, 18, 21

*Hudson v. McMillian*, 503 U.S. 1 (1992) .......................................... 12, 17

*Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022) 13, 14, 29, 30, 31, 32, 33

*In re Air Cargo Shipping Services Antitrust Litig.*, 697 F.3d 154 (2d Cir. 2012) ............................................................................................ 39

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ............................................................................................... 39

*Isayeva v. Sacramento Sheriff's Dep*'t, 872 F.3d 938 (9th Cir. 2017) ....... 4

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001) .............................. 7, 8, 26

*Keller v. Trefz*, 66 Fed. Appx. 44, 2003 WL 1870718 (7th Cir. 2003) ..... 28

*Landes Construction Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365 (9th Cir. 1987) ................................................................... 35, 36

*LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993) .................................... 17

*Manley v. Rowley*, 847 F.3d 705 (9th Cir. 2017) ............................... 31, 32

*Medical Center at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713 (6th Cir. 2019) ......................................................................... 38

*Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010) ................................. 12

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ........................................... 2, 3

*Reichle v. Howards*, 566 U.S. 658 (2012) ............................................... 10

*Robins v. Meecham*, 60 F.3d 1436 (9th Cir. 1995) .................................. 30

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) .. 10, 11

*Rodriguez v. Elmore*, 407 Fed. Appx. 124, 2010 WL 5393881 (9th Cir. 2010) ........................................................................... 16, 18

*Saavedra v. Scribner*, 482 Fed. Appx. 268, 2012 WL 2024910 (9th Cir. 2012) ............................................................................... 36

*Sandin v. Conner*, 515 U.S. 472 (1995) ................................................. 38

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................... 3, 5

*Skinner v. Cunningham*, 430 F.3d 483 (1st Cir. 2005) ............... 20, 21, 34

*Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984) ....................... 15, 16, 18, 22

*Spann v. Lombardi*, 65 F.4th 987 (8th Cir. 2023) ................................. 36

*Stenzel v. Ellis*, 916 F.2d 423 (8th Cir. 1990) ........................................ 24

*Thornburgh v. Abbott*, 490 U.S. 401 (1989) .......................................... 38

*Tobias v. Arteaga*, 996 F.3d 571 (9th Cir. 2021) .................................... 30

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) .................................. 29

*Torres v. Runyon*, 80 Fed. Appx. 594, 2003 WL 22598339 (9th Cir. 2003) ................................................................................ 22

*Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987) .................................... 36

*Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143 (1946) ................................................................................ 35

*US West Communications, Inc. v. Jennings*, 304 F.3d 950 (9th Cir. 2002) ................................................................................ 35, 36

*Washington v. Ondrejka*, 822 Fed. Appx. 104, 2020 WL 4700885 (3d Cir. 2020) ...................................................................... 25

*Whitley v. Albers,* 475 U.S. 312 (1986) ................ 11, 12, 17, 18, 19, 22, 34

*Wilkins v. Gaddy*, 559 U.S. 34 (2010) ....................................... 13, 26, 32

*Williams v. City of Sparks*, 112 F.4th 635 (9th Cir. 2024) ....................... 3

*Woodford v. Ngo*, 548 U.S. 81 (2006) ............................................ 35, 37

## STATUTES

42 U.S.C. § 1997e ........................................................................ 35

## RULES

9th Cir. R. 32-1 ........................................................................... 41

Fed. R. App. P. 32 ........................................................................ 41

## I. INTRODUCTION

Plaintiff-Appellee Sean Harvell failed to meet his burden of proof establishing Defendants violated the Eighth Amendment when, after repeated warning, Defendants properly used objectively reasonable force to move Harvell to segregated housing, after Harvell threatened violence. Harvell repeatedly and intentionally refused direct orders to submit to restraints, in an attempt to assert his authority over NDOC correctional officers, placing NDOC staff and other offenders in danger. Harvell's argument is entirely based on the unsupportable assertion that he was in full restraints when he was "kneeling on the ground," before moving forward, and then Officers Brown and Rigney supposedly punched him. This misrepresentation, however, is flatly contradicted by the video evidence which establishes the leg restraints were not put on when Harvell was kneeling on the ground, but only after Harvell attempted to stand up, and then ran to the back of his cell, and then only after Harvell's legs were secured, despite Harvell's continued resistance. Video Recording, TI 2:55-3:50.

The undisputed material facts establish Defendants did not violate the Eighth Amendment's prohibition against cruel and unusual punishment because the use of force was a good faith effort to restore discipline, after Harvell created chaos of his own making by intentionally refused to comply with officers' lawful orders, and then by

resisting efforts to impose restraints. The objectively reasonable force was not used maliciously and sadistically for the purpose of causing harm but was properly applied during the rapidly unfolding chaos of the physical struggle to place Harvell in restraints and to extract him from his cell and move him to segregated housing. By properly employing the use of force, Defendants were able to restore order and extract Harvell from his cell in less than ninety seconds, with minimal injury.

Defendants are entitled to qualified immunity because they did not violate the Eighth Amendment, much less violate a right clearly established beyond debate. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment, and remand with instructions to grant Defendants' motion because they are shielded by qualified immunity.

## II. ARGUMENT

### A. This Court Has Jurisdiction Over this Appeal of the District Court's Improper Denial of Defendants' Motion for Summary Judgment Asserting Qualified Immunity

In *Behrens*, 516 U.S. 299[1] and *Plumhoff*, 572 U.S. 765,[2] the Supreme Court expressly rejected Harvell's argument that this Court

[1] In *Behrens*, the Supreme Court noted the "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact," but holding that "surely does not mean that

lacks jurisdiction over this appeal because the district court erroneously determined that a material dispute of facts was present. Harvell concedes, in *Scott*, 550 U.S. at 380-81, the Supreme Court had no doubts about jurisdiction, even though the plaintiff's version of the facts told "quite a different story," when the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Plumhoff,* 572 U.S. at 773. Contrary to Harvell's inuendo, the Supreme Court in *Plumhoff* held that "deciding legal issues of this sort is a core responsibility of appellate courts." 572 U.S. at 773. This Court has repeatedly held: "While appellate review does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact, ***any issue of law*** . . . is a permissible subject for appellate review." *Williams*, 112 F.4th at 642; *Hart*, 99 F.4th at 548 (this Court holding the same). For that reason, in *Hart*, this Court held this Court has "jurisdiction to both (1) determine whether the disputed facts are material and (2) consider whether

---

every such denial of summary judgment is nonappealable." 516 U.S. at 312-13.

[2] In *Plumhoff*, the Supreme Court held an appellate court properly exercises jurisdiction over an appeal of the denial of a motion for summary judgment asserting qualified immunity when it is "beyond serious dispute" that the defendants did not violate the constitution, even though the district court "determine[ed] that there exists a trialable issue of fact." 572 U.S. at 772-73, 777.

[defendant] is entitled to qualified immunity when the material facts are viewed in the light most favorable to Plaintiffs." *Id* at 548.[3]

---

[3] The snippets of dicta cited by Harvell do not require a contrary result. None of the cases cited by Harvell dismissed Defendants' qualified immunity appeal for lack of jurisdiction because Defendants opposed the district court's determination that a genuine issue of material fact was present. To the contrary, in *Isayeva*, 872 F.3d at 945 (9th Cir. 2017), this Court held "the existence of a genuine dispute about the reasonableness of an officer's use of force does not preclude granting qualified immunity or eliminate any basis for an immediate appeal of denial of qualified immunity." The Court determined it had "jurisdiction over the current appeal" because "[e]ither prong [of qualified immunity] can be adjudicated on appeal by taking the facts as most favorable to the plaintiffs and applying the pertinent legal standards to those facts." *Id.* Similarly, while this Court in *Ames,* 846 F.3d at 347, indicated in dicta that "[w]here the district court has determined the parties' evidence presents genuine issues of material fact, such determinations are not reviewable on interlocutory appeal," quoted by Harvell, this Court exercised jurisdiction and reversed the district court's denial of qualified immunity because this Court "may properly review a denial of qualified immunity where a defendant argues . . . that the facts, even when considered in the light most favorable to the plaintiff, show no violation of a constitutional right, or no violation of a right that is clearly established in law." Likewise, in *George*, 736 F.3d at 836-37, relied upon by Harvell, this Court held it had jurisdiction to determine "whether the defendant[s] would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor," even though defendants' "briefs lapse into disputing [plaintiff's] version of the facts." For that reason, in *Estate of Silva*, 2025 WL 1218454, at *1, this Court held "the officers' defense-friendly presentation of the facts does not deprive [this Court] of jurisdiction." *See also Howard*, 2025 WL 275118, at *1 (this Court holding the same). This Court reasoned "although the officers' appellate briefing arguably

Here, the video evidence, just as in *Scott*, establishes "quite a different story" from that told by Harvell with respect to his resistance, the force applied, and the injuries sustained by Harvell. Contrary to Harvell's mischaracterization in his Answering Brief, he did not declare in his complaint "that 'once leg restraints were on,' Officers Rigney and Brown 'pushed me forward to the ground & began to punch on me again & again'— 'splitting my head open' and 'causing damage to my eyes.'" Answering Brief at 8, citing 2-ER 228. Instead, Harvell falsely declared:

> While kneeling on the ground, CERT C/O Rigney was grabbing me while S C/O Brown placed ankle restraints on my legs. Once leg restraints were on, some said "stop resisting or force would be used" to which CERT C/O Rigney and S C/O Brown pushed me forward & began to punch me again and again, splitting my head open, causing damage to my eyes requiring me to need glasses.

---

lapsed into disputing plaintiffs' version of the facts, we are fully capable of distinguishing between advocacy and the record itself" and therefore the "officers' characterization of the facts" did "not deprive [the Court] of jurisdiction" over officer's "qualified-immunity defense." *Estate of Silva,* 2025 WL 1218454at *1. Even under the authority cited by Harvell, and even if Defendants inadvertently lapsed into disputing plaintiff's version of the facts supported by admissible evidence, which is absolutely not the case, this Court has jurisdiction because Defendants are entitled to qualified immunity because after construing the facts and drawing all reasonable inferences in favor of Harvell, the material evidence demonstrates that Defendants did not violate the law, much less violate clearly established law, beyond debate.

2-ER-228. These allegations, however, are flatly contradicted by the video and the objective medical evidence.

In the video, the leg restraints were not put on when Harvell was kneeling on the ground, but only after Harvell attempted to stand up, and then ran to the back of his cell, and then only after Harvell's legs were secured, despite Harvell's continued resistance. Video Recording, TI 2:55-3:50.[4] Contrary to Harvell's repeated argument, the video evidence establishes Harvell repeatedly and intentionally disobeyed orders to voluntarily submit to restraints, that Harvell resisted attempts to secure him in restraints, and that officers were able to extract Harvell within ninety seconds after entering Harvell's cell, with minimal injury.

In *Howard*, 2025 WL 275118, this Court recently clarified: "notwithstanding the rule barring evidence-sufficiency challenges on interlocutory appeal," this Court has jurisdiction not only when

---

[4] Additionally, the video and the objective medical evidence establishes that Harvell's head was not split open, but that he merely suffered a laceration on the upper left eye with minimal bleeding, but with the eyebrow swelling; a laceration on the right eyebrow, with swelling and minimal bleeding; and bruising around the bridge of the nose, all of which required minimal medical attention. 2-ER-154; Sealed 3-ER-278; Video Recording, TI 9:40-9:50,11:40-14:10. The medical evidence further establishes that corrected lenses were required because Harvell suffered from mild farsightedness and mild astigmatism, not due to any injury to his eyes. Sealed 3-ER-280.

"plaintiff's version of the facts is blatantly contradicted by the record," but also when "plaintiff's claims 'are premised on bare allegations.'" *Id.* at *1.[5]

For example, in *Foster*, 908 F.3d at 1217–18, this Court held it had jurisdiction to determine "the district court erred in finding a genuine dispute as to whether [the defendant] approached [the plaintiff] with his gun drawn" because the "bare allegation alone, without any evidence in the record, is insufficient to conclude that [the defendant] did anything more than unholster his gun during the initial encounter with" plaintiff. This Court reached this result, "[a]lthough the plaintiffs argue[d] in their brief on appeal that [defendant] . . . pointed his firearm" at the plaintiff, because "no evidence in the record support[ed] this claim." *Id.* at 2017.

Likewise, in *Jeffers,* 267 F.3d at 907, 918, this Court determined it had jurisdiction to review and reverse the district court's denial of defendants' motion for summary judgment asserting qualified immunity, even though the district court found that "defendants' motive was in dispute." The Court held when "there is an *allegation* of bad

---

[5] Quoting *Estate of Anderson v. Marsh*, 985 F.3d 726, 731 n.3 (9th Cir. 2021) (holding this Court "may review claims that a plaintiff has presented no evidence such that his arguments about the illegality of a defendant's conduct are premised on 'bare allegations'").

motive, but *no evidence* of bad motive," a plaintiff cannot establish a Fourth Amendment violation, and therefore remanded "with a direction to enter judgment in favor of Appellants[-Defendants]" because they were "entitled to qualified immunity." *Id.* at 907, 913-14, 918 (emphasis in the original). In both *Foster*, 908 F.3d at 2018 n.10, and *Jeffers,* 267 F.3d at 907, this Court reasoned: "When there is an allegation about the conduct part of the equation, but insufficient evidence of that conduct to create a genuine issue of material fact, our cases permit review."

Additionally, in *Estate of Ford*, 301 F.3d at 1048, this Court rejected a jurisdictional challenge based on the argument that the appeal involved a sufficiency of the evidence challenge because, even when conceding the factual dispute identified by plaintiff, "it cannot be said that a reasonable officer would understand [that his conduct] was constitutionally impermissible." This Court reasoned jurisdiction was proper to "decide ***whether there is a material dispute*** about the correctional officers' conduct." *Id.* (emphasis added). Only when the Court determines a material dispute is present, need the Court "assume those facts in the [plaintiff's] favor in order to determine whether the denial of qualified immunity was appropriate." *Id.* Even though the district court "concluded that genuine issues of material fact exist as to whether" defendants violated the Eighth Amendment, this Court reversed because "it would not have been clear to a reasonable

correctional officer knowing what each knew (viewed in the light most favorable to the [plaintiff]) that [the officers' conduct] would be constitutionally impermissible." *Id.* at 1048, 1053. As held in *Cunningham*, 345 F.3d at 807, this Court has "jurisdiction from district court orders that decide not only that material facts are in dispute, but also that the defendant's alleged conduct violated the plaintiff's clearly established constitutional rights."

Harvell ignores the undisputed material evidence which justified the use of force, and establishes the force employed was reasonable in light of Harvell's undisputed refusal to obey orders, and his undisputable relatively minor injury as a result of the force employed. Accordingly, this Court not only has jurisdiction over this appeal, this Court should reverse the district court's denial of Defendants' motion for summary judgment because Defendants are entitled to qualified immunity.[6]

[6] *See Carley*, 103 F.4th at 658-59 (this Court holding even when the "district court conclude[s] that there is still a genuine dispute of material fact," this Court has jurisdiction to determine "whether the defendant would be entitled to qualified immunity as a matter of law," after "assuming all factual dispute are resolved, and all reasonable inferences are drawn, in plaintiff's favor").

### B. Defendants Are Entitled to Qualified Immunity Because Harvell Failed to Establish a Violation of a Clearly Established Law, Beyond Debate

Harvell admits Defendants are shielded by qualified immunity when a plaintiff fails to meet his burden of showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," as set forth in *al-Kidd*, 563 U.S. at 735. *See* Answering Brief at 12, 26, 34-37. Along with that concession, Harvell fails to point to any material facts established by actual evidence in the record, not flatly contradicted by the video evidence and the medical record, establishing that each Defendant's own personal and knowing actions violated a right "beyond debate," under existing precedent. *Reichle*, 566 U.S. at 664-65. Defendants, therefore, could not have "understood that what [they were] doing violates that right." *Id*. Instead, contrary to *Reichle*, Harvell fails to point to any actual evidence in the record establishing that each Defendant personally used excessive and unnecessary force under the circumstances actually present, or that any Defendant acted maliciously and sadistically for the purpose of causing harm, all necessary to establish an Eighth Amendment violation. *See Rodriguez*, 891 F.3d at 776. Harvell, therefore, does not attempt to show an Eighth Amendment violation "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665.

Accordingly, Harvell cannot show a violation of a right, much less a clearly established right required to overcome qualified immunity.

### C. Defendants Did ***NOT*** Use Excessive Force Against Harvell in Violation of the Eighth Amendment

Harvell admits, pursuant to *Rodriguez*, 891 F.3d at 795, that an Eighth Amendment excessive force claim fails unless he meets his burden of proving: (1) the defendant "used excessive and unnecessary force under all of the circumstances;" (2) defendant "acted maliciously and sadistically for the purpose of causing harm;" and (3) "the acts of the [defendant] caused harm to the [plaintiff]." Answering Brief at 26. Harvell also admits, as set forth by this Court in *Bearchild*, 947 F.3d at 1140, the "subjective inquiry for excessive force claims 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *See* Answering Brief at 27.

Harvell also ignores the Supreme Court's determination, in *Whitley,* 475 U.S. at 321-22, that because the use of force relates to the prison official's "legitimate" interest in "preserv[ing] internal order and discipline and to maintain institutional security," courts, which includes juries, should accord prison officials "wide-ranging deference" when

reviewing the necessity of using force.[7] Harvell wrongly argues that deference is question of fact for the jury. Answering Brief at 67. *Whitley* expressly rejected that argument. The Supreme Court held "deference extends to a prison security measure taken in response . . . to prophylactic or preventive measures intended to reduce the incidence of . . . any . . . breaches of prison discipline" and therefore "neither judge nor jury [may] freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U.S. at 322. When viewed through the required deferential lens, it is clear Defendants' use of force did not violate the Eighth Amendment.

### 1. Defendants' Use of Force Was Necessary and ***NOT*** Excessive

Harvell concedes the following factors in *Hudson*, 503 U.S. at 7 are used to establish the force applied was necessary and not excessive: (1) "the extent of injury suffered by an inmate;" (2) "need for application of force;" (3) "the relationship between that need and the amount of force used;" (4) "the threat reasonably perceived by the responsible officials;" and (5) "any efforts made to temper the severity of a forceful response." Answering Brief at 32. Harvell, however, merely

---

[7] *See also Norwood*, 591 F.3d at 1066-67 (this Court holding "[prison officials are entitled to deference [when] a prisoner challenges excessive force").

enumerates these factors without providing any legal analysis as to how these factors apply here. Answering Brief at 32.

First, the video establishes Harvell's injuries were relatively minor as a result of the force employed.[8] Harvell admits, in *Hughes*, 31 F.4th at 1221, this Court held evidence that a detainee, who "suffered dog bites to his left leg, abrasions to his head and face, and bruising on his upper right thigh," along with "scarring and residual soreness in his left leg," merely established "injuries [that] are relatively minor," and therefore "this factor weigh[ed] slightly in favor of the defendant law enforcement officers." Answering Brief at 47.

Contrary to Harvell's unsupported argument, the injuries sustained by Harvell were far less than those sustained in *Hughes*. Harvell ignores that the objective examination and video recording revealed only minor injuries.[9] 2-ER-154; Sealed 3-ER-278; Video

---

[8] Harvell ignores *Wilkins*, 559 U.S. at 37-38, where the Supreme Court held the "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."

[9] In *Arpin*, 261 F.3d at 922, this Court rejected an excessive force claim under the Fourth Amendment because plaintiff did "not provide any medical records to support her claim that she suffered injury as a result of being handcuffed." While this action deals with cruel and unusual punishment under the Eight Amendment, this Court has

Recording, TI 9:40-9:50,11:40-14:10. Harvell does not dispute that he was stable and his vital signs were within normal limits. Sealed 3-ER-278. While the examination revealed a laceration on the upper left eye with minimal bleeding, but with the eyebrow swelling; a laceration on the right eyebrow, with noticeable swelling and minimal bleeding; and noticeable bruising around the bridge of the nose (2-ER-154; Sealed 3-ER-278; Video Recording, TI 12:50-14:00), contrary to Harvell's Complaint, video reveals that his head was not split open. Video Recording, TI 9:40-9:50, 11:40-14:10. Also contrary to Harvell's allegations, his blurry vision was caused by mild farsightedness and mild astigmatism, not due to any injury to his eyes. Sealed 3-ER-280. As Harvell's injuries are less serious than the injuries sustained in *Hughes*, the first factor weighs in favor of Defendants.

Second, the need for application of force was clear as Harvell does not dispute that he repeatedly refused to follow officers' lawful orders to move to segregated housing. 2-ER-150-56. Harvell then repeatedly and intentionally disobeyed orders to voluntarily submit to restraints, and Harvell resisted attempts to secure him in restraints. 2-ER-150-57; Video Recording, TI 1:25-4:40. The video recording of this incident

---

explained a Fourth Amendment excessive force claim is much more difficult to establish. *See Clement*, 298 F.3d at 903.

clearly and unambiguously confirms the reasonableness of the force under these circumstances.

Harvell's attempt to distinguish the Seventh Circuit's holding in *Soto*, 744 F.2d at 1266 is unavailing. Just as with this case, in *Soto,* the prisoner refused to follow officers' lawful orders to submit to restraints through the food slot so that he could be extracted. *Id*. at 1266. Just as was held in *Soto*, the use of force "for failure of [Harvell] to obey a direct order . . . was a reasonable response to [NDOC's] legitimate security concern." When "an order [was] given to [Harvell] there [were] only so many choices available to the correctional officer" and because Harvell could not "be persuaded to obey the order, some means [was required to] be used to compel compliance, such as a chemical agent ***<u>or physical force</u>***." *Id*. at 1267 (emphasis added). As in *Soto*, this Court should reject the suggestion that "rather than seek to enforce orders, it was possible to leave [Harvell] alone if he chooses not to obey a particular order and wait him out" because "experience and common sense establish that a prison cannot be operated in such a way." *Id*. at 1267. *Soto* explained discipline "is essential if the prison is to function and provide for the care, safety and security of the staff and inmates." *Id*. "Orders given must be obeyed." *Id*. Harvell "cannot be permitted to decide which orders [he] will obey, and when [he] will obey them." *Id*. NDOC "must exercise authority and control" or else "[m]ob rule would

take over," and there "would not, and could not, be any protection for staff or inmates." *Id.* When Harvell "refused to obey a proper order, he [was] attempting to assert his authority over a portion of the institution and its officials" and such "refusal and denial of authority place the staff and other inmates in danger." *Id.*[10]

---

[10] Harvel does not dispute this Court has repeatedly reached the same result and does not even attempt to distinguish the following: *Howard*, 465 Fed. Appx. at 670 (this Court holding the district court properly granted judgment in favor of prison officials when the inmate "disobeyed an order to stop pounding on his cell door after he also received a warning that failure to comply would result in the use of pepper spray" because the "force [was] applied in a good faith effort to maintain or restore discipline"); *Rodriguez*, 407 Fed. Appx. at 125–26 (this Court holding the district court properly granted judgment in favor of prison officials when official's "us[ed] pepper spray after [a prisoner] and his cellmate repeatedly refused to comply with orders to exit their cell and be handcuffed" because such evidence "fail[s] to raise a triable issue as to whether prison officials acted maliciously and sadistically for the very purpose of causing harm" required to establish a violation of the Eighth Amendment); *Allen*, 253 Fed. Appx. at 659 (this Court holding the district court properly granted judgment in favor of prison officials "when they administered pepper spray in an effort to restore discipline after [an] inmate . . . refused to comply with orders to submit to standard handcuffing procedure and attempted to block a cell extraction team from entering his cell" because "they administered pepper spray in an effort to restore discipline"); *Eccleston,* 168 Fed. Appx. at 761 (this Court holding the district court properly granted judgment on an inmate's "claim that the use of a chemical agent during his cell extraction constituted cruel and unusual punishment because the evidence submitted established that the chemical agent was only used after [the inmate] repeatedly did not follow orders to leave his cell" because such force was "applied in a good

Harvell attempts to sidestep this ruling in *Soto* by focusing on the type of force used (Answering Brief at 54-55), rather than the "need for application of force" as held by the Supreme Court in both *Hudson*, 503 U.S. at 7, and *Whitley*, 475 U.S. at 321. Harvell does not dispute officers considered using chemical and electronic force but could not because Harvell was on the desensitized list. Harvell does not even attempt to argue that force was unnecessary when Harvell intentionally and repeatedly refused to follow officers' orders to submit to restraints (2-ER-150-57, 201; Video Recording, TI 1:25-4:40) and therefore Harvell could not be permitted to decide which orders he would obey, and when he would obey them.[11]

When Harvell refused to obey the repeated proper orders to move to segregated housing and to submit to restraints, he was attempting to assert his authority over NDOC and its officials, which refusal and denial of authority placed NDOC staff and other inmates in danger. Accordingly, the use of force for Harvell's repeated and intentional disobedience of direct orders to submit to restraints was a reasonable

---

faith effort to restore discipline and order, and not maliciously and sadistically for the very purpose of causing harm").

[11] *See LeMaire*, 12 F.3d at 1462 (this Court holding to "allow prisoners to choose which jailhouse rules they will obey would result in chaos").

response to the NDOC's security concern because NDOC has the duty to protect the staff and inmates from assaults, such as throwing urine on medical staff. As in *Howard*, *Rodriguez, Allen, Eccleston* and *Soto,* force was the only option left available. Accordingly, the second factor weighs heavily in favor of Defendants.

Third, the amount of force used was reasonable, while the need to use force was necessary because Harvell intentionally, and repeatedly disobeyed officers' orders to move to segregated housing and to submit to restraints. Harvell does not dispute he lacks any evidence to contradict officers' statements that he continued to resist officers' attempts to place leg restraints on Harvell. 2-ER-150-57; Video Recording, TI 1:25-4:40. Despite Harvell's continued resistance, Harvell admits the entire extraction lasted only ninety seconds. 2-ER-150-57; Video Recording, TI 2:55-4:40.

Harvell ignores *Whitley*, where the Supreme Court explained that because prison official "are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the obligation to take reasonable measures to guarantee the safety of the inmates themselves," courts should be "hesitan[t] to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance," 475 U.S. at 320.

As already set forth, the limited and objectively reasonable force was necessary because Harvell repeatedly refused to comply with orders to move to segregated housing and to submit to restraints. Upon entering the cell, officers were required to make split second decisions with respect to how to respond to Harvell's resistance to restraints, and how to secure Harvell in restraints. Even if Harvell plausibly alleged Officers Brown and Rigney struck Harvell after his legs were restrained, which is absolutely not the case because Harvell's declaration is flatly contradicted by the video, Harvell does not dispute that he offers no evidence that these officers knew that Harvell had been restrained when he was struck. Harvell concedes that an officer does not violate the Eighth Amendment by employing force in a dangerous situation, in haste and under pressure, which in hindsight, under calm reflection, may have been unnecessary, because such is "hardly behavior from which a wanton willingness to inflict unjustified suffering on respondent can be inferred." *Whitley*, 475 U.S. at 321–25.

Harvell ignores *Whitley,* where the Supreme Court held the "infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." 475 U.S. at 319. This is especially true here, when

Harvell's intentional choice to disobey prison officials' repeated orders to move to segregated housing and to submit to restraints was the sole reason for the need to use force in the first place, which Harvell could have avoided by simply taking one of the repeated chances to comply with officers' orders.

Harvell's attempt to distinguish the First Circuit in *Skinner*, 430 F.3d at 488 is unavailing. Just as with this case, *Skinner* involved the inmate refusal to follow officers' lawful orders to submit to restraints so he could be extracted, the officers entering the cell, pushing [the inmate] to the ground, handcuffed him, and carried him out," along with the inmate assertion that he "was punched in the face," as he was being extracted. *Id.* at 488. Contrary to Harvell's argument, just as in *Skinner,* the "chaos [was] wholly of [Harvell's] making," because it could have been entirely avoided if he had voluntarily submitted to restraints, and therefore, just as in *Skinner*, such evidence did not establish that the Harvell was "harmed through deliberate or wanton force unnecessary to his removal." *Id*. at 488-89.

Also contrary to Harvell's argument, the First Circuit in *Skinner* never indicated the video contradicted inmate's claim that he was punched in the face. Answering Brief at 53. Instead, the court determined "there is no evidence in the video or elsewhere that [the officer] deliberately struck [the inmate] or that any of the other guards

deliberately injured [the inmate]," to hold that "no reasonable jury could find that [the inmate's] injury, such as it was, resulted from cruelty or deliberate infliction of pain." *Id.* at 489. Likewise, the record lacks any evidence that any Defendant deliberately struck Harvell after he was fully restrained. Just as in *Skinner*, the chaos caused by Harvell, as represented in the video, establishes that force was required, was reasonable, ceased once it was announced that Harvell was fully restrained, and that Harvell was not harmed through deliberate or wanton force unnecessary to his removal, all of which is required to establish an Eighth Amendment violation. The video establishes that, due to Defendants' actions, Harvell's injuries were treated immediately by medical staff, which further establishes his minor injuries did not result from cruelty or deliberate infliction of pain. Accordingly, the third factor also weighs heavily in favor of Defendants.[12]

Fourth, contrary to Harvell's unsupported argument, Defendants reasonably perceived Harvell's disobedience as a threat to discipline, safety, security and order. Harvell does not dispute his extraction was necessary because Harvell was charged with making threats, a major

---

[12] *See Howard*, 465 Fed. Appx. at 670 (holding the use of force was proper when an inmate "disobeyed an order" because force was "applied in a good faith effort to maintain or restore discipline"); *Allen*, 253 Fed. Appx. at 659 (holding administering force was a proper "effort to restore discipline after [an] inmate . . . refused to comply with orders").

violation, and a bed move to segregated housing is required while charges are pending to prevent the inmate from carrying out his threats. Under *Whitley*, this Court must determine the "extent of the threat to the safety of staff and inmates, ***as reasonably*** [and subjectively] ***perceived by the responsible officials on the basis of the facts known to them***,"[13] not as it may appear to offenders or judges in retrospect after the force was employed. 475 U.S. at 321 (emphasis added).[14]

Due to Harvell's charges of threats and disobedience, Defendants were required to assume that Harvell was dangerous.[15] Harvell's

---

[13] Contrary to *Whitley*, Harvell asks this Court to require Defendants to assume that he did not represent a danger, that his refusal to follow orders would not encourage other offenders to similarly refuse to follow orders, and that the prison would not become unmanageable once offenders recognized that orders would not be enforced. Defendants, however, could not afford to make any such assumptions because offenders, not NDOC officials, would then be in control of NDOC prisons.

[14] *See also Torres* 80 Fed. Appx. at 596 (this Court applying "the reasonableness standard to [the officer's] actions in the actual moment based upon the information the officer had when the conduct occurred" and not in perfect hindsight").

[15] *See Soto*, 744 F.2d at 1267 (indicating cell extractions are inherently dangerous because inmates that disobey rules are "unpredictable—passive at one time and aggressive the next moment," and "injuries occur to the staff even when they enter the cell in the ERU [Emergency Response Unit] gear").

actions therefore were reasonably perceived as a threat to safety and security by Defendants. Accordingly, the fourth factor also weighs heavily in Defendants' favor.

Fifth, contrary to Harvell's unsupported argument, Defendants repeatedly made efforts to temper the severity of the forceful response. Harvell does not dispute he was repeatedly ordered to pack up his property and move to segregated housing but refused to comply. 2-ER-150-56, 201. Harvell also does not dispute he was then repeatedly ordered to comply with orders to submit to restraints, but Harvell continued to resist. 2-ER-150-57; Video Recording, TI 1:25-4:40.

Harvell ignores that before employing force, officers discussed alternatives to hands-on force but determined that because Harvell was on the desensitized list, that chemical and electronic uses of force could not be used, and therefore hands-on force was the only viable option that could be used to extract Harvell. Video Recording, TI 0:30-0:37.

Harvell also ignores that each officer was instructed as to their duties with respect to the use of force and ensured that medical would present in the event of injury. 2-ER-154; Video Recording, TI 0:0-0:50. Harvell does not dispute he was given repeated chances to voluntarily submit to restraints to avoid the use of force. Video Recording, TI 1:25-3:05. Harvell then ignores that he was examined by medical within minutes after he was extracted. 2-ER-154; Sealed 3-ER-278; Video

Recording, TI 2:55-13:30. Harvell concedes, upon examination, his injuries were so minor that medical was able to release Harvell to be moved to segregated housing. 2-ER-154; Sealed 3-ER-278; Video Recording, TI 10:45-13:30. Harvell therefore cannot dispute that Defendants therefore made substantial efforts to temper the severity of their response, but to no avail. Harvell simply and intentionally refused to follow Defendants' orders.

Harvell's attempts to distinguish the Eighth Circuit in *Stenzel*, 916 F.2d 423 is also unavailing. Just in *Stenzel,* Harvell refused to follow repeated orders making it necessary for Defendants "to move him forcefully." *Id.* at 427. Unlike this case, however, the jailers did not attempt to put the inmate in restraints in order to avoid the need for further force. *Id.* Instead, the inmate was then "pulled to his feet" and "was smashed into the bars on the way out." *Id.* As determined in *Stenzel*, had Defendants "simply wanted to assault [Harvell], there was no reason [over the course of an hour, to repeatedly request Harvell to comply with their order to submit to restraints] and then warn him of the consequences of his behavior." *Id.* at 427. Moreover, Harvell concedes that had Defendants wanted to use force for the purpose of maliciously and sadistically causing harm (which undoubtedly would have resulted in significant injuries), there was no reason for Defendants to consider alternatives to hands on force or for Defendants

to request medical to be present. Instead, these efforts to temper the severity of the force establish that Defendants applied force in a good faith effort to maintain and restore discipline.[16] Accordingly, the fifth factor also weighs heavily in favor of Defendants.

As all factors favor Defendants, the use of force by Defendants was necessary and ***not*** excessive. Accordingly, Defendants did not violate the Eighth Amendment, and the district court erred when denying Defendants' motion for summary judgment.

### 2. Harvell Failed to Allege Facts Establishing a Sadistic or Malicious Purpose for the Force Applied

Harvell points to no evidence in the record establishing any Defendant had a sadistic or malicious purpose for the force applied. Harvell does not allege any reason for the use of force other than his

[16] *See Bearchild*, 947 F.3d at 1142 (recognizing that "providing a prior warning or giving an order to comply" establishes that "efforts [were] made to temper the severity of a forceful response," as set forth in Ninth Circuit Model Jury Instructions); *Furnace*, 705 F.3d at 1030) (this court holding "giving [inmate] medical treatment" establishes the tempering "factor favors the officers"); *Cockrell*, 510 F.3d at 1312 (Eleventh Circuit holding the "fact that [the two officers] immediately summoned medical assistance for [inmate] tempered the severity of the forceful response, . . . and makes it less likely that either of them was acting sadistically instead of in good faith"); *Washington*, 822 Fed. Appx. at 107 (Third Circuit holding efforts taken to temper the severity of the response include instruction on how to prevent injury to the inmate).

own misconduct, and continued refusal to comply with officers' orders submit to restraints. *See Wilkins*, 559 U.S. at 40 (explaining plaintiff "will ultimately have to prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline'"). Harvell ignores *Jeffers*, where this Court held to meet this subjective element, a plaintiff "must put forward specific, nonconclusory fact[s] . . . that establish improper motive causing cognizable injury." 267 F.3d at 911. Harvell, however, offers no such evidence.

Instead, Harvell wrongly argues a sadistic or malicious purpose is shown by officers striking Harvell after he was fully restrained. *See* Answering Brief at 29-30. As already set forth, however, Harvell's statements concerning the use of force are flatly contradicted by the videos and the objective medical evidence. In the video, the leg restraints were not put on when Harvell was kneeling on the ground, as Harvell misrepresented (2-ER-228), but only after Harvell attempted to stand up, and then ran to the back of his cell, and then only after Harvell's legs were secured, despite Harvell's continued resistance. Video Recording, TI 2:55-3:50. No jury could believe Harvell's claim that he was punched after the restraints were secured to his legs because the video establishes Harvell misrepresents when the leg restraints were secured. No jury could believe Harvell's misrepresentation that

his head was split open (2-ER-228) because the video and the objective medical evidence establishes Harvell merely suffered a laceration on the upper left eye with minimal bleeding, but with the eyebrow swelling; a laceration on the right eyebrow, with swelling and minimal bleeding; and bruising around the bridge of the nose, all of which required minimal medical attention. 2-ER-154; Sealed 3-ER-278; Video Recording, TI 9:40-9:50,11:40-14:10. No jury could believe Harvell's minor vision problems were caused by the force employed (2-ER-228), as the medical evidence establishes that corrected lenses were required because Harvell suffered from mild farsightedness and mild astigmatism, not due to any injury to his eyes. Sealed 3-ER-280.

Contrary to Harvell's repeated argument, the video evidence establishes Harvell repeatedly and intentionally disobeyed orders to voluntarily submit to restraints, Harvell resisted attempts to secure him in restraints, and officers were able to extract Harvell within ninety seconds after entering Harvell's cell, with minimal injury. Defendants did not violate the Eighth Amendment because the force applied was necessary due to Harvell's repeated intentional refusal to obey orders to submit to restraints, and Harvell failed to point to any

evidence in the record establishing a sadistic or malicious purpose for the force applied.[17]

### 3. Harvell Failed to Allege Facts Establishing the Force Personally Employed by Officer Pickens Was Excessive

Harvell ignores *Iqbal*, 556 U.S. at 676, where the Supreme Court held a plaintiff must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Harvell also ignores *Farmer*, 511 U.S. at 837, where the Supreme Court held, to establish an Eighth Amendment violation, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Harvell does not dispute that Officer Picken's "failure to alleviate a significant risk that [she] should have perceived but did not" does not establish an Eighth Amendment violation. *Id.* at 838.

---

[17] *See Keller*, 66 Fed. Appx. at 46 (Seventh Circuit holding inmate failed to establish officers violated the Eighth Amendment, by asserting officers "gratuitously slammed [inmate's] head against the floor and, using a wrist restraint, violently and repeatedly yanked his body against the cell door," which "resulted in pain, abrasions, scars, scratches, and soreness" because the inmate did "not dispute that he failed to comply with lawful orders and resisted the officers," and "no evidence has been submitted to suggest that the amount of force used by [the officers] was other than a good faith effort to restore discipline").

Harvell concedes Officer Pickens did not hit, punch or otherwise abuse him in any way. Instead, Harvell wrongly argues Officer Pickens violated the Eighth Amendment by failing to intervene to prevent Officers Brown or Rigney from punching Harvell. Answering Brief at 56-62. Harvell, however, merely speculates Officer Pickens knew Harvell was going to be punched or was punched, then speculates she could have abandoned her duty to restrain Harvell, thus placing other officers in danger, and then speculates that if she did abandon her duty, she would have been able to prevent the alleged punch, and then speculate that she could have taken such action in the few brief seconds these punches supposedly occurred. Such speculation upon speculation cannot establish Officer Pickens knew Harvell faced a risk of excessive force and could have done something to prevent it.[18] Especially given the lack of any objective evidence in the video confirming that there were any punches.

Harvell overlooks that in *Hughes*, expressly relied upon by Harvell, this Court also determined officers involved in subduing an escapee, which escapee was punched by a canine officer after being fully

[18] *See Toguchi,* 391 F.3d at 1059 (this Court holding a "conclusion [that] was merely speculative" could not establish that a defendant "disregarded "disregarded [a] serious and known risks," because the witness "lacked any insight into [defendant's] subjective knowledge").

restrained, did not violate the Eighth Amendment because there was no evidence that these officers punched the escapee after the escapee was "fully subdued." 31 F.4th at 1123. This Court held the "excessive force claims" against these officers "fail as a matter of law" because the acts of these officers "took place during the rapidly unfolding chaos of the physical struggle to apprehend" the escapee. *Id.* The Court reasoned officers "cannot be held liable for fleeting acts which they did not commit, came without warning, and could not have prevented."[19] *Id.* As Harvell does not allege Officer Pickens employed excessive force, that she knew excessive force was to be employed, or had any ability to prevent the alleged excessive force, Officer Pickens did not violate the Eighth Amendment.

---

[19] Harvell's reliance on *Robins*, 60 F.3d 1436 (9th Cir. 1995) is misplaced. In *Robins*, the officers were not in the middle of the "rapidly unfolding chaos of [a] physical struggle," but were away from harm in the "control bubble," but nevertheless fired a shot gun at an inmate when the inmate refused to lock up, which shot struck another inmate. *Id.* at 1442. As explained by this Court in *Tobias*, 996 F.3d at 584, there is "no violation of [the] duty to intercede where there was no evidence that the defendant was aware of the constitutional violation as it occurred" because "officers can be held liable for failing to intercede only if they had an opportunity to intercede." Here, Harvell point to no evidence establishing Officer Pickens knew Harvell was punched during the chaos and certainly points to no evidence that she could have intervened in the seconds remaining after any alleged punch.

### D. Harvell Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law

Harvell fails to cite any Supreme Court or circuit authority which squarely governs the facts of this case and would, beyond debate, clearly establish a violation of the Eighth Amendment.[20] Harvell ignores *Cunningham*, 229 F.3d at 1289, where this Court held resolving dispositive motions "based on qualified immunity" requires conducting an "individualized analysis . . . , examining each of the . . . elements of the alleged" cause of action, when determining whether the law was clearly established. Harvell principally relies upon *Hughes*, 31 F.4th 1211 and *Manley*, 847 F.3d 705. *See* Answering Brief at 36 – 49. Neither of these cases, however, clearly establish that Defendants violated the Eighth Amendment.

An individual analysis of *Manley* establishes Defendants did ***not*** violate the Eighth Amendment. Harvell intentionally ignores, in

---

[20] Harvel does not dispute the district court wrongly concluded that disputed facts supposedly prevented the Court from ruling on qualified immunity. 1-ER-15; *see also Carley*, 103 F.4th at 660 (holding the district court erred when ruling the defendant was "not entitled to qualified immunity at this time" simply because there was "still a genuine dispute of material fact as to whether" the defendant violated the constitution because the "court must proceed to the second step to decide whether the violation was clearly established at the time of the violation"). Instead, Harvel argues this Court should affirm despite the district court error when refusing to take this essential second step.

*Manley*, the prisoner was not only "restrained in handcuffs and leg irons," but the prisoner was allegedly "punched, kicked, and stomped," "after [the prisoner's] extraction," and thus after the rapidly unfolding chaos of the physical struggle to restrain the prisoner, and well after the prisoner was fully subdued and completely under control. 847 F.3d at 709. Here, the video flatly contradicts any claim by Harvell that the leg restraints were put on before Harvell attempted to stand up and ran to the back of his cell. Video Recording, TI 2:55-3:50. Accordingly, here any punches occurred during the rapidly unfolding chaos of the physical struggle to restrain Harvell, and therefore force applied in a good faith effort to restore disciplines, as set forth in *Wilkins*, 559 U.S. at 40, and neither "judge nor jury [may] freely substitute their judgment," in hindsight, for that of Defendants due to the "deference extend[ed] to a prison security measure taken in response . . . to prophylactic or preventive measures intended to reduce the incidence . . . any . . . breaches of prison discipline," as mandated by *Whitley*, 475 U.S. at 322.

Harvell also ignores that *Hughes* established Officer Pickens did ***not*** violate the Eighth Amendment. Harvell does not even attempt to distinguish Officer Pickens, who admittedly did not punch Harvell, from the officers who admittedly did not punch the escapee in *Hughes*, and were found not to violate the Eighth Amendment as a matter of law. 31 F.4th at 1123. Just as in *Hughes*, Harvell's "excessive force claims"

against Officer Pickens "fail as a matter of law" because the acts of Officer Pickens "took place during the rapidly unfolding chaos of the physical struggle" to restrain Harvell, and therefore Officer Pickens "cannot be held liable for fleeting acts which [she] did not commit, came without warning, and could not have prevented." *Id.*

Contrary to Harvell's arguments, the force allegedly applied by Officers Brown and Rigney is unlike that allegedly applied by the canine officer in *Hughes*. Unlike here, the video in *Hughes* did not "blatantly disprove [the escapee's] claim that he was punch" after being "fully subdued" and "completely under control." 31 F.4th at 1219-23. As already set forth, no jury could believe Harvell's claim that he was punched after the restraints were secured to his legs because the video establishes Harvell misrepresents when the leg restraints were secured. *Compare* Video Recording, TI 2:55-3:50, *with* Harvell's allegation that "restraints were on" when Harvell was "kneeling on the ground" before Harvell went "forward." 2-ER-228. Accordingly, unlike *Hughes*, any alleged punches occurred before Harvell was "fully subdued" and "completely under control," but during the "during the rapidly unfolding chaos of the physical struggle." No court has held employing force to extract an offender from his cell after an inmate repeatedly and intentionally refuses to follow direct orders move to segregated housing and to submit to restraints violates the Eighth Amendment, especially

when the force was necessary and reasonably applied in a good faith effort to maintain or restore discipline, and the force ceased once the offender was "fully subdued" and "completely under control." To the contrary, as set forth above, the Supreme Court and circuit courts, when considering this issue, have repeatedly held an offender's refusal to follow orders justifies the use of force, and officers do not violate the Eighth Amendment "simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense," *Whitley*, 475 U.S. at 319, especially when the "chaos [was] wholly of [the inmate's] making," *Skinner*, 430 F.3d at 488-89. Harvell simply fails to point to facts showing Defendants use of force was "excessive and unnecessary," or that Defendants "acted maliciously and sadistically," both of which are required to establish an Eighth Amendment violation. Harvell therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate.[21] Accordingly, Defendants are shielded by qualified immunity, and the district court erred when denying Defendants' motion to dismiss.

---

[21] *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation").

### E. This Court Must Accept as True NDOC Factual Findings Supported by Substantial Evidence

Harvell does not dispute, in *Woodford*, 548 U.S. at 88, the Supreme Court held the Prisoner Litigation Reform Act (PLRA, 42 U.S.C. § 1997e(a)) adopted the "well established . . . jurisprudence of administrative law" by requiring exhaustion of administrative remedies. Harvell also does not dispute that one of those "well established" administrative law principles is that the "reviewing court's function is limited." *See Aragon*, 329 U.S. 143, 153 (1946), cited with approval in *Woodford,* 548 U.S. at 90. Harvell also concedes, under well established" administrative law principles, a state agency's "findings of fact are reviewed for substantial evidence" (*US West*, 304 F.3d at 958 (9th Cir. 2002)), and the court reviewing the agency decision may not "weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists." *Landes Construction,* 833 F.2d at 1371 (9th Cir. 1987).

Even though the Supreme Court held PLRA adopted such "well established" principles of "administrative law" (*Woodford*, 548 U.S. at 88), Harvell complains the Court should simply ignore these principles because no court has yet adopted them in the prison context. Answering Brief at 65-66. To the contrary, in *Ashker*, 81 F.4th at 883, this Court has already adopted this standard when reviewing prison disciplinary proceedings, and held "prison disciplinary determinations

must be supported by some evidence." Just as in *US West* and *Landes*, the "some evidence" standard is a "'minimally stringent' standard requiring only that there is any evidence in the record that could support the conclusion reached" by the administrative agency. *Ashker*, 81 F.4th at, 884.

Similarly, in *Barnett*, 31 F.3d at 816, this Court held the "district court properly granted summary judgment on [inmate's] retaliation claim" when there was "some evidence" to support prison official's action. *See also Saavedra,* 482 Fed. Appx. at 272 (this Court relying on the "some evidence standard" when determining prison officials were entitled to qualified immunity); *Spann*, 65 F.4th at 990-93 (Eighth Circuit reversing the denial of prison officials' motion for summary judgment asserting qualified immunity when "some evidence" supported disciplinary board's decision that the inmate violated the rules, even though the inmate asserted the charges were falsified); *Turney*, 831 F.2d at 140 (Sixth Circuit holding the same).

Accordingly, contrary to Harvell's argument the "some evidence" standard may be properly employed when ruling on a motion for summary judgment, even in the prison context, during a qualified immunity appeal, so long as agency's decision is supported by "some evidence." This Court need only follow the Supreme Court's lead and apply the "well established" principle of administrative law which

employs the "some" or "substantial' evidence standard when reviewing an administrative agency's decision made during exhaustion.

Contrary to Harvell's argument, when ruling on Harvell's grievances, NDOC not only expressly found Harvell "refused orders to submit to restraint," and that the officers "used the minimal amount of force to get [Harvell] into restraints," but also expressly found "the use of force was reasonable." 2-ER-77, 159. Harvell does not dispute these findings were supported by NDOC's investigation, officer reports, and the video.

As NDOC findings are supported by "substantial' or "some" evidence, this Court must accept these findings as true. To do otherwise would effectively "turn the [PRLA's exhaustion requirement] into a useless appendage."[22] *Woodford*, 548 U.S. at 93. Harvell simply offers no justification for failing to afford prisons the same deference

---

[22] Prisons would not be given a fair opportunity to correct their mistakes if a court could "topple over"' their findings of fact supported by substantial evidence simply because the court drew a different conclusion. *Woodford*, 548 at 90. Similarly, the record developed by prisons would become useless if courts could simply ignore the record with the prison's findings of fact. *Id*. at 89. Additionally, ignoring a prison official's findings of facts would impinge on the broad discretion that should be afforded prison officials and convert courts into prison wardens, a position which courts are ill equipped to undertake. *See Sandin*, 515 U.S. at 482; *Thornburgh*, 490 U.S. at 407–08.

provided to other state agencies when reviewing their findings of fact, especially when the Supreme Court has repeatedly held that a state has no stronger interest than the administration of its prisons.[23]

---

[23] Harvell's only other argument is that Defendants forfeited this argument by not raising it before the district court. Answering Brief at 65. Harvell misunderstands the doctrines of waiver and forfeiture. In *Allen*, 38 F.4th at 71, this Court held when an Appellant's argument "is not a new claim but is, instead, a new argument in support of their consistent claim" then "Appellants can make any argument in support of their claim on appeal" because "they are "not limited to the precise arguments they made below." This Court declared: "As the Supreme Court has made clear, it is claims that are deemed waived or forfeited, not arguments." *Id.*; *see also Citizens United*, 558 U.S. at 330 (same). Defendants' argument that Harvell cannot establish the elements of his Eighth Amendment claim because the findings of fact of the administrative agency are supported by some evidence is not a not a new claim, but is instead, a new argument in support of his consistent claim that Harvell has failed to establish the elements of his Eighth Amendment claim. Defendants have consistently argued that Harvell cannot establish all of the elements of his Eighth Amendment claim. As only claims are deemed waived or forfeited, and not arguments, Defendants consistent, albeit more precise, argument has not been waived or forfeited. *See Medical Center*, 922 F.3d at 729 n.10 (6th Cir. 2019) (Sixth Circuit holding defendants did not waive or forfeit new argument that plaintiff failed to establish claim because parties "are not limited to the precise arguments they made below"); *Bartley*, 568 Fed. Appx. at 836 n.6 (Eleventh Circuit holding defendant did not waive precise argument "detain the plaintiffs to ensure officer and public safety" because defendant made "the broader claim that the challenged detention was lawful" as "parties are not limited to the precise arguments they made below"); *In re Air Cargo*, 697 F.3d at 161 n.3 (Second Circuit holding argument which is "additional support for Defendants' position" should not be disregarded on appeal because

Accordingly, this Court should adopt NDOC's findings of fact, supported by substantial evidence, when ruling on summary judgment. Nevertheless, even accepting Harvell's version of the facts, supported by admissible evidence, Defendants are still entitled to summary judgment as a matter of law because they are shielded by qualified immunity.

## III. CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment denying Defendants' motion for summary judgment,

---

"[o]nce a federal claim is properly presented, a party can make any argument in support of that claim" as "parties are not limited to the precise arguments they made below"). Even if the waiver or forfeiture rule were applicable, in *Mercury Interactive Corp.* 618 F.3d at 992, this Court explained "waiver is a discretionary, not jurisdictional, determination." The Court held such discretion will be exercised "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* Here, Harvell does not dispute that when the "some evidence" standard is applied, his Eighth Amendment claim fails as a matter of law. The administrative record has been fully provided, and therefore Harvell will not be prejudiced by the Court exercising its discretion to the extent this Court deems Defendants' have failed to raise a claim, rather than an argument, below. As Defendants did not waive or forfeit the claim that Harvell failed to establish the elements of an Eighth Amendment claim, even though Defendants now establishes that argument based on the evidence in the administrative record presented to the district court, this Court should adopt NDOC's findings of fact, supported by "substantial" or "some" evidence, when ruling on summary judgment.

and remand with instruction to grant Defendants' motion because Defendants are entitled to qualified immunity.

Respectfully submitted January 20, 2026,

AARON D. FORD
Attorney General

By: *\/s\/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General
*Attorneys for the Defendants-Appellants*

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 6867 words.

Respectfully submitted January 20, 2026,

AARON D. FORD
Attorney General

By: */s/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLANTS' REPLY BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic filing system on January 20, 2026.

Participants in the case who are registered users will be served by the appellate electronic file system, as follows:

Samuel Weiss, Esq.
Rights Behind Bars
416 Florida Avenue, NW, No. 26152
Washington, DC 20001
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee*

*/s/ Kimalee Goldstein*
An employee of the Office of the
Nevada Attorney General